**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BLUE OCEAN INSTITUTE<br>250 Lawrence Hill Road<br>Cold Spring Harbor, NY  11724<br><br>CARL SAFINA<br>Post Office Box 2383<br>Amagansett, NY  11930<br><br>     Plaintiffs<br><br>     v.<br><br>CARLOS M. GUTIERREZ, in his official capacity as<br>Secretary of the United States Department of Commerce<br>Department of Commerce, Room 5851<br>14th Street and Constitution Avenue, NW<br>Washington, DC  20230<br><br>NATIONAL MARINE FISHERIES SERVICE,<br>Department of Commerce, Room 14555<br>1315 East-West Highway<br>Silver Spring, MD  20910<br><br>     Defendants. | No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      The plaintiffs Blue Ocean Institute and Carl Safina hereby challenge the

defendants' failure to adopt a fishery management plan that prevents overfishing of the western

Atlantic bluefin tuna ("bluefin") and minimizes the unintentional catch ("bycatch") of bluefin

that is depleting its already overfished population.  In particular, the plaintiffs challenge

defendants' arbitrary and capricious rejection of a recent petition that sought protection for

spawning members of the bluefin population.

2.     The bluefin population has been in steep decline for more than twenty-five years. Defendants (hereinafter "the Fisheries Service") officially declared bluefin tuna to be an overfished species in 1997. The latest estimates of the bluefin population show that it is now at its lowest point ever, and that it is hovering on the brink of collapse.

3.     Despite the precarious status of this fish, and in clear violation of the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"), the Fisheries Service has refused to protect western Atlantic bluefin on their spawning grounds in the Gulf of Mexico.  In particular, in a final rule governing the management of bluefin and other "highly migratory species" of fish dated October 2, 2006, the Fisheries Service ignored the best available science and rejected a petition filed by the Blue Ocean Institute and other conservation groups and decided not to order any reduction in fishing effort by longline fishermen in the Gulf of Mexico that is killing as "bycatch" depleted bluefin in their known spawning area. This decision by the Fisheries Service rejected specific practicable fishery management measures supported by the best available science that would help prevent continued overfishing of the bluefin.

## APPLICABLE STATUTES, JURISDICTION, AND VENUE

4.     This action arises under the MSA, 16 U.S.C. §§ 1801-1883; the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f; and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

5.     This Court has jurisdiction over this action pursuant to the MSA.  That statute provides that "[t]he district courts of the United States shall have exclusive jurisdiction over any case or controversy arising under" the MSA. 16 U.S.C. § 1861(d). The MSA also provides that regulations promulgated under that statute shall be subject to judicial review "if a petition for such review is filed within 30 days after the date on which the regulations are promulgated or the

action is published in the Federal Register, as applicable." 16 U.S.C. § 1855(f). The Fisheries

Service published the final rule implementing the Consolidated Highly Migratory Species

(HMS) Fishery Management Plan (FMP) on October 2, 2006 in the Federal Register. See 71 Fed.

Reg. 58058. Plaintiffs are filing this Complaint within thirty (30) days after the publication of

that final rule.

6.　　This Court also has federal question jurisdiction over this action pursuant to 28

U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising

under the . . . laws . . . of the United States" and 28 U.S.C. § 1361, which grants the district

courts "original jurisdiction of any action in the nature of mandamus to compel an officer or

employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

7.　　Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because the

Fisheries Service defendants are located in this district and a substantial part of the events or

omissions giving rise to the claim occurred here.

8.　　This Court may issue a declaratory judgment in this case pursuant to the

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and may grant relief pursuant to the MSA,

16 U.S.C. §§ 1861(d) and 1855(f), as well as the APA, 5 U.S.C. § 706.

## DESCRIPTION OF THE PARTIES

9.　　Plaintiff Blue Ocean Institute (the Institute) is a non-profit conservation

organization headquartered in Cold Spring Harbor, New York dedicated to developing

conservation solutions for ocean resources. To further this goal, the Blue Ocean Institute

promotes public awareness, education, and citizen involvement in the conservation of marine

wildlife and resources and supports related programs. Working through science, literature, and

art, the Institute broadens the number of people who are aware of the importance of ocean

3

wildlife. The work of the Institute includes the development of innovative solutions to minimize bycatch of sea turtles and birds by longline fishing gear. Institute staff members share their expertise at symposia and conferences, publish reports and scientific papers, and speak for ocean life through popular media such as television, documentaries, and magazines. The Institute conducts research and writes about western Atlantic bluefin tuna. The President of the Institute, Carl Safina, has published several books that address ocean conservation; these include *Song for the Blue Ocean*. Published in 1998, *Song for the Blue Ocean* included a detailed description of the plight of the bluefin. The interests and work of the Institute in ocean conservation are directly and adversely affected by the failure of the Fisheries Service to prevent overfishing of the western Atlantic bluefin tuna. By allowing continued overfishing and bycatch of bluefin, the Fisheries Service is reducing the already depleted population of that fish to even more dangerously low levels and contributing to the possible collapse of that fish population that has recently been shown to harbor unique genetic diversity. The interests of the Institute in protecting western Atlantic bluefin tuna, and in observing, writing about, and educating the public concerning western Atlantic bluefin tuna, have been adversely affected by the failures of the Fisheries Service to prevent overfishing and to minimize bycatch of that fish. Moreover, unless the relief sought in this complaint is granted, those interests will continue to be adversely affected and irreparably injured by the Fisheries Service's unlawful failure to perform its non-discretionary duties under the MSA, NEPA, and the APA.

10.    Plaintiff Carl Safina is a writer and scientist who currently serves as President of the Blue Ocean Institute. Dr. Safina has been actively involved in efforts to protect and conserve western Atlantic bluefin tuna for more than a decade. He has served as a member of the Mid-Atlantic Fishery Management Council and has attended numerous government meetings

convened to address the regulation of the bluefin, including meetings held both in the United

States and abroad in connection with the deliberations of the International Commission for the

Conservation of Atlantic Tunas. He regularly communicates with the Fisheries Service

concerning the need to protect the bluefin. He has fished for and observed bluefin in United

States ocean waters, beginning in the late 1960's. He is the author of *Song for the Blue Ocean*, a

book published in 1998 that devotes itself in part to describing the depleted condition of the

bluefin and the need to take action to conserve the bluefin population. Dr. Safina intends to

continue to work on protecting the bluefin population, and to observe and write about the

bluefin. Dr. Safina's interests in protecting western Atlantic bluefin are directly and adversely

affected by the failure of the Fisheries Service to prevent overfishing of the western Atlantic

bluefin tuna stock. By allowing continued overfishing and bycatch of bluefin, the Fisheries

Service is reducing the already depleted population of that fish to even more dangerously low

levels and contributing to the possible collapse of that fish population that has recently been

shown to harbor unique genetic diversity. Dr. Safina is concerned that the Fisheries Service'

actions and failures to act as described in this Complaint are resulting in lowered bluefin

populations in the Gulf of Mexico and along the east coast of the United States. As a result, Dr.

Safina's continuing interests in observing, studying, and fishing for western Atlantic bluefin tuna

have been adversely affected by the failures of the Fisheries Service to prevent overfishing and

to minimize bycatch of bluefin. Among other things, the Fisheries Service's failure to halt

overfishing of bluefin has caused bluefin to be effectively unavailable for recreational fishing of

the type Dr. Safina engages in. Moreover, unless the relief sought in this complaint is granted,

those interests will continue to be adversely affected and irreparably injured by the Fisheries

Service's unlawful failure to perform its non-discretionary duties under the MSA, NEPA, and the APA.

11.     Defendant Carlos M. Gutierrez is Secretary of the United States Department of Commerce. He is sued in his official capacity as the chief officer of the Department charged with overseeing the proper administration and implementation of the MSA, including those MSA provisions that require an end to overfishing and that mandate the minimization of bycatch.

12.     Defendant National Marine Fisheries Service ("NMFS") is an agency of the United States Department of Commerce that has been delegated the responsibility to issue regulations implementing fishery management plans ("FMPs") for highly migratory fish stocks such as the western Atlantic bluefin tuna. NMFS is the United States government agency with primary responsibility to ensure that the MSA's requirements are followed and enforced, including the requirements to end overfishing, to rebuild overfished populations of fish, and to minimize bycatch.

## LEGAL AND FACTUAL BACKGROUND

### Legal Framework for Fisheries Management of Atlantic bluefin tuna

13.     The MSA establishes a system for conserving and managing fish populations in the exclusive economic zone of the United States, which generally extends from the boundaries of state waters to 200 miles offshore. The MSA requires the Fisheries Service to conserve and manage fish populations pursuant to a number of "National Standards" and certain other requirements.

14.     Bluefin tuna are classified as a "Highly Migratory Species" ("HMS") under the MSA. For HMS such as bluefin tuna, the MSA charges the Fisheries Service with direct responsibility for preparing an FMP for purposes of conservation and management. See 16

6

U.S.C. §§ 1802(20), 1854(g)(1), 1852(a)(3). All FMPs and regulations implementing FMPs,

including the FMP for HMS, are subject to final review and approval of the Fisheries Service to

ensure that they comply with the requirements of the MSA, as well as with other applicable laws

and requirements. 16 U.S.C. § 1854(a), (b).

15.     In enacting the MSA, Congress found that:

> Certain stocks of fish have declined to the point where their survival is
> threatened, and other stocks of fish have been so substantially reduced in
> number that they could become similarly threatened as a consequence of
> (A) increased fishing pressure, (B) the inadequacy of fishery resource
> conservation and management practices and controls....

> Fishery resources are finite but renewable. If placed under sound
> management before overfishing has caused irreversible effects, the fisheries
> can be conserved and maintained so as to provide optimum yields on a
> continuing basis.

16 U.S.C. § 1801(a)(2), (5).

16.     National Standard One of the MSA requires that "[c]onservation and management

measures shall prevent overfishing while achieving, on a continuing basis, the optimum yield

from each fishery . . . ." 16 U.S.C. § 1851(a)(1).

17.     National Standard Two of the MSA requires that "[c]onservation and

management measures shall be based upon the best scientific information available." 16 U.S.C.

§ 1851(a)(2).

18.     The MSA requires that the Fisheries Service identify overfished fish populations

and manage those populations by attaining the optimum yield that will rebuild them to a healthy

population level. 16 U.S.C. § 1802(28)(C) (optimum yield for an overfished fishery provides for

rebuilding the population); 16 U.S.C. § 1853(a)(10) (FMPs must "specify objective and

measurable criteria for identifying when the fishery to which the plan applies is overfished" and

"contain conservation and management measures to prevent overfishing or end overfishing and

7

rebuild the fishery"); 16 U.S.C. § 1854(e) (requirements to identify and rebuild overfished

fisheries as soon as possible).

19.     National Standard Nine of the MSA requires that conservation and management

measures must, to the extent practicable, avoid or minimize bycatch and bycatch mortality. 16

U.S.C. § 1851(a)(9).

20.     The MSA also requires that FMPs must

> establish a standardized reporting methodology to assess the amount and type of
> bycatch occurring in the fishery, and include conservation and management
> measures that, to the extent practicable and in the following priority --
> (A) minimize bycatch; and
> (B) minimize the mortality of bycatch which cannot be
> avoided[.]

16 U.S.C. § 1853(a)(11).

21.     Because some Atlantic bluefin spend part of their lives in international waters,

they are subject to regulation by the International Commission for the Conservation of Atlantic

Tunas ("ICCAT"). ICCAT establishes bluefin quotas for each member country; thus United

States fishermen are limited to catching the amount of western Atlantic bluefin allocated to this

country's quota.

22.     The Atlantic Tunas Convention Act ("ATCA") is the federal statute that – along

with the MSA – provides authority to the Fisheries Service to manage bluefin tuna in

conformance with quotas established by ICCAT. See 16 U.S.C. § 971.

23.     In pertinent part, ATCA provides that the defendant Secretary of Commerce shall

promulgate regulations that are "necessary and appropriate" to carry out the recommendations of

ICCAT that establish the western Atlantic bluefin quota for the United States fishing fleet. See

16 U.S.C. § 971d(c)(1)(A). In addition, ATCA requires that such regulations "shall, to the extent

practicable, be consistent with fishery management plans [FMPs] prepared and implemented

under" the MSA. 16 U.S.C. § 971d(c)(1)(C). ATCA also provides that no such regulations "may have the effect of increasing or decreasing any allocation or quota of fish or fishing mortality level" set by ICCAT. 16 U.S.C. § 971d(c)(3).

24.     NEPA requires the Fisheries Service to analyze the environmental impacts of a reasonable range of alternative measures for ending overfishing and rebuilding an overfished stock of fish, as well as for avoiding or minimizing bycatch, when it prepares an FMP. 42 U.S.C. § 4332(2)(C). Thus, NEPA requires the Fisheries Service to analyze the environmental impacts of the HMS FMP and consider alternatives to the proposed action with respect to bluefin, including alternatives that might mitigate the impacts of the FMP on bluefin, while developing the scientific information and analysis necessary to analyze those impacts and alternatives.

25.     The APA requires courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law," and to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

**Overfishing and Depletion of the Bluefin tuna**

26.     Western Atlantic bluefin tuna are one of the most important predators in the oceans. They are large (up to ten feet in length and 1,500 pounds), fast (able to reach swimming speeds of 40 mph), and capable of regulating their body temperature to allow themselves to hunt in both warm and cold waters. They spawn in the Gulf of Mexico annually, primarily between the months of March and June, and then spend much of their early years foraging off the east coast of the United States and Canada. The bluefin in the Gulf of Mexico have been shown to have fidelity to the Gulf for up to three years and harbor unique molecular genotypes indicative of a separate bluefin population.

27.     Bluefin tuna are extraordinarily valuable fish to catch. The demand for raw bluefin tuna -- particularly in high-end sashimi markets in Japan -- is so great that individual bluefin have been known to fetch as much as $30,000, or $40,000, or more. As a result, there is intense fishing pressure to catch these fish -- and their total populations have been falling steadily for the past 20 years.

28.     In recognition of the depleted state of the bluefin, the Fisheries Service officially identified them as "overfished" under the MSA on September 30, 1997.

29.     Bluefin tuna are regulated at both the national and international level. At the international level, they are subject to the jurisdiction of the International Commission for the Conservation of Atlantic Tunas (ICCAT). Membership of ICCAT includes the United States, Japan, Spain, Canada, and a host of other countries that fish for tuna in the Atlantic Ocean. Based upon advice from its scientific advisory committee, ICCAT has tried to manage the fishing for these tuna in a fashion that ensures it will survive and support a sustainable fishery. Thus, for several decades, ICCAT and its scientists have made an effort to track the population of both western Atlantic bluefin tuna and eastern Atlantic bluefin tuna, and ICCAT has allocated quotas to each member country that allow each country to catch a certain amount of these fish.

30.     ICCAT makes certain management recommendations for specific fish species, including bluefin tuna. Pursuant to the Atlantic Tunas Convention Act ("ATCA"), the United States is tasked to maintain consistency with these ICCAT recommendations. See 16 U.S.C. § 971d(c)(1)(A). In 1999, ICCAT recommended that no fishing be allowed to target bluefin tuna in their Gulf of Mexico spawning area during their spawning season. Thus, the Fisheries Service has prohibited directed fishing for bluefin in the Gulf of Mexico. See 50 C.F.R. § 285.31(a)(30).

31.    On the national level, the Fisheries Service is required by the relevant federal statutes (MSA and ATCA) to conform with the quotas set by ICCAT, to prevent overfishing of bluefin tuna and to avoid or minimize bycatch mortality of bluefin. Accordingly, both in its negotiations at ICCAT and in its regulations authorizing fishing in federal waters, the Fisheries Service must take care to protect against quotas that allow an excessive amount of fishing. In connection with these efforts, the MSA further requires the Fisheries Service to rely upon the best available science that describes the status of the population and its chances of survival on a sustainable basis. In April of 1999, the Fisheries Service issued a fishery management plan ("FMP") for bluefin in an effort to end overfishing and rebuild the bluefin population. That FMP adopted the bluefin rebuilding plan recommended by ICCAT.

32.    Neither the ICCAT international management effort nor the domestic actions by the Fisheries Service have halted the steady decline in the population of the western Atlantic bluefin. In 2004, ICCAT reported that the spawning stock biomass of western Atlantic bluefin had decreased by at least 80% since 1970. The most recent assessment published by ICCAT shows both that the bluefin population is at its lowest level ever, and that fishing pressure is at its highest point ever.

33.    Indicative of the steep bluefin population decline is that United States fishers have been unable to catch the quota allocated to them by ICCAT for the past four years. During the most recent fishing season U.S. bluefin fishers caught less than 15% of their ICCAT quota.

34.    New scientific data published in the journal Nature in the spring of 2005 confirmed that spawning-age western Atlantic bluefin tuna were present in United States waters of the Gulf of Mexico during the months of January through June, and that they were spawning during the period between March and June. The Nature paper conclusively established that

longline fishing vessels kill these bluefin as "bycatch" while those vessels are fishing for

yellowfin tuna in the bluefin spawning area. This Nature article pointed out that longline fishers

targeting yellowfin tuna were killing numerous spawning bluefin in the Gulf of Mexico because

incidentally caught bluefin were physiologically stressed due to elevated ocean temperatures in

the Gulf during spawning season and therefore died at very high rates shortly after being caught.

The Nature article further identified the particular area of the Gulf occupied by the bluefin and

stated that prohibiting yellowtail tuna longline fishing in the bluefin spawning area would

eliminate this often fatal bycatch of spawning bluefin.

35.     On the basis of these data and the article in Nature, the Blue Ocean Institute and

several other conservation groups submitted a petition on June 8, 2005, to defendant Gutierrez.

The June 2005 petition emphasized that longline fishing in the Gulf of Mexico bluefin spawning

area kills significant numbers of bluefin, depletes the bluefin population, and cripples the

potential of the bluefin to rebuild to a healthy level. Accordingly, the June 2005 petition

requested defendant Gutierrez to take immediate action to stop all longline fishing in the Gulf of

Mexico bluefin spawning areas during spawning season. This June 2005 petition also requested

defendant Gutierrez to initiate a rulemaking designed to permanently prohibit all fishing activity

that can catch bluefin tuna (either intentionally, or incidentally as "bycatch") in their spawning

areas in the Gulf of Mexico during their spawning season.

36.     In response to the petition, the Fisheries Service declined to take immediate action

to prevent illegal bycatch of spawning bluefin in the Gulf, and promised to address the problem

and further consider the petition for closure in connection with its Draft Fishery Management

Plan for Highly Migratory Species ("HMS FMP"). The HMS FMP looked at a number of

actions relating to the management not of only bluefin tuna, but also other so-called "highly

migratory species." In an environmental impact statement ("EIS") prepared by the Fisheries Service in connection with the HMS FMP during 2005 and 2006, the Fisheries Service acknowledged that bluefin tuna are overfished and subject to continued overfishing, but declined to establish a fishing closure of the bluefin spawning area in the Gulf of Mexico.

37.     In comments on this EIS, the plaintiffs advised the Fisheries Service that there was no sound basis for its conclusion. Among other things, the plaintiffs provided evidence of several relevant factors that the Fisheries Service had failed to consider. These relevant factors included: (a) the Fisheries Service had disregarded evidence of the disproportionately high biological importance of protecting spawning bluefin; (b) the Fisheries Service had ignored evidence that bluefin only mature between the ages of 10 and 12 years (several years later than the time the Fisheries Service had assumed) and therefore require protection for a longer period of time than Fisheries Service was allowing; (c) the Fisheries Service had rejected evidence that western Atlantic bluefin tuna spawn exclusively in the Gulf of Mexico; and (d) the Fisheries Service had overlooked evidence that bluefin caught in their spawning area in the Gulf of Mexico during spawning season are likely to experience a high rate of mortality due to their unique physiology and the fact that they are highly stressed by spawning in the warm waters of the Gulf.

38.     The plaintiffs also noted in their comments that the Fisheries Service had failed to adequately analyze the effects of closing longlining in the bluefin spawning area in the Gulf of Mexico by, among other things, failing to develop a realistic model that addressed the potential redistribution of fishing effort and by failing to realistically weight the value of bycatch. In addition, the plaintiffs advised the Fisheries Service that it had wrongly failed to address their proposal for a cap on bycatch in the longline fishery in the Gulf.

39.    A recent paper by Fisheries Service scientists supports the view that bluefin begin to breed between the ages of 10 to 12 years. This paper is consistent with the April 2005 Nature article and with the comments of the plaintiffs on the EIS, and contrasts with the Fisheries Service's policy of regulating bluefin on the assumption that bluefin begin to breed at 8 years.

40.    The Fisheries Service did not decide to take steps to protect bluefin in response to the plaintiffs' comments. Instead, the Fisheries Service published the final rule implementing the HMS FMP rule on October 2, 2006 that refused to institute any closure of longline fishing in the bluefin spawning area in the Gulf of Mexico during spawning season, or otherwise to take any action to halt the collapse of the western Atlantic bluefin population.

41.    As a result of the decision by the Fisheries Service to violate the MSA, deny the plaintiffs' petition, and refuse to institute a fishing closure in the bluefin spawning area of the Gulf of Mexico during bluefin spawning season, additional bluefin were killed as bycatch by longline fishers fishing in that area in 2006. More bluefin can be expected to die in that spawning area in 2007, and in subsequent years, until the Fisheries Service reduces the fishing pressure in that area during bluefin spawning season. These bluefin mortalities contribute to continued overfishing and harm the capacity of the western Atlantic bluefin tuna to survive and to rebuild as a healthy and sustainable fish population.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### THE HMS FMP FAILS TO PREVENT OVERFISHING OF BLUEFIN TUNA

42.    The plaintiffs reallege and incorporate by reference paragraphs 1- 41 of this Complaint in this First Claim for Relief.

43.     National Standard 1 of the MSA requires that "[c]onservation and management measures shall prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery for the United States fishing industry." 16 U.S.C. § 1851(a)(1).

44.     The MSA requires the Fisheries Service to promulgate and implement a fishery management plan that prevents overfishing and rebuilds overfished fish populations within not more than 21 months after they identify those populations as being overfished. 16 U.S.C. § 1854(e).

45.     The Fisheries Service identified bluefin tuna as overfished on September 30, 1997, and issued a fishery management plan addressing overfishing and rebuilding for bluefin in April of 1999. Notwithstanding these actions, the overfished bluefin population has steadily declined. In fact, the Fisheries Service acknowledged that western Atlantic bluefin tuna remain overfished and are subject to continued overfishing when they published the EIS accompanying the final rule implementing the HMS FMP on October 2, 2006.

46.     In their final rule implementing the HMS FMP on October 2, 2006, the Fisheries Service refused to take action to minimize bluefin bycatch or avoid the killing of spawning bluefin as bycatch in their spawning grounds located in the Gulf of Mexico.

47.     The Fisheries Service's October 2, 2006 final rule implementing the HMS FMP fails to prevent overfishing and promote rebuilding of the bluefin tuna population, notwithstanding the deadlines and requirements contained in the MSA.

48.     These actions and failures to act by the Fisheries Service violate the MSA.

49.     These actions and failures to act by the Fisheries Service are arbitrary, capricious, and contrary to law in violation of the APA. These actions and failures also constitute actions that have been both unlawfully withheld and unreasonably delayed in violation of the APA.

15

50.     These violations of the MSA and the APA by the Fisheries Service threaten the plaintiffs with irreparable injury for which they have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF:
## THE HMS FMP FAILS TO RELY UPON THE BEST
## SCIENTIFIC INFORMATION AVAILABLE

51.     The plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 - 41 of this Complaint in this Second Claim for Relief.

52.     National Standard 2 of the MSA requires that "[c]onservation and management measures shall be based upon the best scientific information available." 16 U.S.C. § 1851(a)(2).

53.     The best scientific information available demonstrates that: (i) the population of bluefin tuna is at its lowest level ever; (ii) the Gulf of Mexico is a discrete spawning ground for western Atlantic bluefin tuna; (iii) the average age at which bluefin tuna become sexually mature is between 10 and 12 years; (iv) spawning bluefin are being killed as bycatch in their spawning grounds in the Gulf of Mexico and bluefin subject to bycatch in the Gulf spawning grounds suffer a high rate of mortality; (v) any redistribution of fishing effort resulting from closing the Gulf of Mexico bluefin spawning area to longline fishing during bluefin spawning season would not occur in the manner assumed by the Fisheries Service; and (vi) closing the Gulf of Mexico bluefin spawning area to longline fishing during bluefin spawning season would reduce mortality of bluefin and help to prevent overfishing of bluefin.

54.     In their final rule implementing the HMS FMP on October 2, 2006, the Fisheries Service disregarded the best scientific information available and refused to close the Gulf of Mexico bluefin spawning area to fishing during bluefin spawning season.

55.    The Fisheries Service's October 2, 2006 final rule implementing the HMS FMP therefore is not based upon the best scientific information available.

56.    These actions and failures to act by the Fisheries Service violate the MSA.

57.    These actions and failures to act by the Fisheries Service are arbitrary, capricious, and contrary to law in violation of the APA. These actions and failures also constitute actions that have been both unlawfully withheld and unreasonably delayed in violation of the APA.

58.    These violations of the MSA and the APA by the Fisheries Service threaten the plaintiffs with irreparable injury for which they have no adequate remedy at law.

### THIRD CLAIM FOR RELIEF:
### THE HMS FMP FAILS TO AVOID OR MINIMIZE
### BYCATCH OF BLUEFIN TUNA

59.    The plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 - 41 of this Complaint in this Third Claim for Relief.

60.    National Standard Nine of the MSA requires that conservation and management measures must, to the extent practicable, avoid or minimize bycatch and bycatch mortality. 16 U.S.C. § 1851(a)(9).

61.    The MSA also requires that FMPs must "establish a standardized reporting methodology to assess the amount and type of bycatch occurring in the fishery" and include practicable measures to minimize bycatch and bycatch mortality. 16 U.S.C. § 1853(a)(11).

62.    In their final rule implementing the HMS FMP on October 2, 2006, the Fisheries Service refused to take the actions necessary to minimize or avoid bycatch of bluefin tuna in the bluefin spawning area of the Gulf of Mexico, and failed to establish a standardized reporting methodology for that bycatch. In that final rule, the Fisheries Service refused to consider establishing a cap on bycatch of bluefin, despite the fact that such an approach would be a

practicable method for reducing bluefin bycatch, and despite the fact that numerous spawning bluefin are being killed as bycatch in the Gulf of Mexico.

63.   The Fisheries Service's October 2, 2006 final rule implementing the HMS FMP therefore does not comply with the requirements of National Standard Nine and the bycatch reporting requirements of the MSA.

64.   These actions and failures to act by the Fisheries Service violate the MSA.

65.   These actions and failures to act by the Fisheries Service are arbitrary, capricious, and contrary to law in violation of the APA. These actions and failures also constitute actions that have been both unlawfully withheld and unreasonably delayed in violation of the APA.

66.   These violations of the MSA and the APA by the Fisheries Service threaten the plaintiffs with irreparable injury for which they have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF:
## THE HMS FMP FAILS TO COMPLY WITH
## THE NATIONAL ENVIRONMENTAL POLICY ACT

67.   The plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 – 41 of this Complaint in this Fourth Claim for Relief.

68.   Section 102(2)(C) of NEPA requires the Fisheries Service to prepare a detailed environmental impact statement ("EIS") whenever they engage in a major federal action significantly affecting the quality of the human environment. 42 U.S.C. § 4332(2)(C). The EIS must carefully assess the environmental impacts of the action. The final rule issued on October 2, 2006 by Fisheries Service to implement the HMS FMP is a major federal action that requires an EIS.

69.   Section 102(2)(E) of NEPA requires the Fisheries Service to consider alternatives in the course of preparing an EIS. 42 U.S.C. § 4332(2)(E).

70.     NEPA regulations of the Council on Environmental Quality require the Fisheries Service to "rigorously explore and objectively evaluate all reasonable alternatives" to the proposed action. 40 C.F.R. § 1502.14.

71.     The Fisheries Service's own internal regulation implementing NEPA requires it to evaluate reasonable alternatives to proposed actions. See NOAA Administrative Order 216-6.

72.     The EIS prepared by the Fisheries Service in connection with the HMS FMP and the final rule implementing that FMP fails to carefully consider the impacts of allowing numerous bluefin to be killed in the Gulf of Mexico and does not consider available alternatives to allowing longlining to continue in the bluefin spawning area of the Gulf during bluefin spawning season. In addition, the EIS does not adequately analyze the effects of closing longlining in the Gulf spawning area for bluefin.

73.     In particular, the EIS for the HMS FMP does not properly consider that the Gulf of Mexico is a discrete spawning ground for western Atlantic bluefin tuna, and that the average age at which bluefin tuna become sexually mature is between 10 and 12 years. In addition, the EIS completely fails to consider the use of a bycatch cap that would limit the number of bluefin killed incidentally in the yellowfin longline fishery that takes place in the bluefin spawning area of the Gulf of Mexico. The EIS for the HMS FMP also ignores recent models that examine the possible redistribution of fishing effort resulting from a closure of that yellowfin longline fishery.

74.     The failure by the Fisheries Service to adequately analyze the adverse effects upon bluefin of the Fisheries Service policy that allows longline fishing to continue in bluefin spawning areas in the Gulf of Mexico, and its additional failure to consider available alternatives to that policy, violates NEPA and constitutes an arbitrary and capricious action that violates the APA.

75.    These violations of NEPA and the APA by the Fisheries Service threaten the plaintiffs with irreparable injury for which they have no adequate remedy at law.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiffs respectfully request this Court to enter the following relief:

1.    Declare that the Fisheries Service has violated the MSA and the APA by failing to halt overfishing of bluefin tuna in the Gulf of Mexico and failing to minimize bycatch of bluefin in the Gulf.

2.    Declare that the Fisheries Service has violated the MSA and the APA by failing to establish a plan to rebuild the overfished population of bluefin tuna in the Gulf of Mexico.

3.    Declare that the Fisheries Service's approval of the October 2, 2006 final rule implementing the HMS FMP with respect to bluefin tuna is arbitrary, capricious, and contrary to law, in violation of the APA.

4.    Declare that the Fisheries Service has violated NEPA by preparing an EIS for the HMS FMP that (a) fails to adequately analyze the adverse effects upon bluefin of the Fisheries Service policy that allows longline fishing in bluefin spawning areas in the Gulf of Mexico during bluefin spawning season and (b) fails to consider mitigation measures and alternatives to that policy.

5.    Order the Fisheries Service to take immediate action to stop all fishing-induced mortality of bluefin in their Gulf of Mexico spawning areas during their spawning season.

6.    Further order the Fisheries Service to initiate a rulemaking designed to permanently prohibit all fishing activity that can catch bluefin tuna (either intentionally, or

incidentally as "bycatch") in their spawning areas in the Gulf of Mexico during their spawning season.

7.    Order the Fisheries Service to prepare a supplemental environmental impact statement for the HMS FMP that adequately analyzes the adverse effects upon bluefin of longline fishing in bluefin spawning areas in the Gulf of Mexico during bluefin spawning season and that considers alternatives to the Fisheries Service policy that allows such fishing.

8.    Provide plaintiffs all their reasonable costs, fees, and attorney fees.

9.    Provide such other and further relief as the Court deems just and proper.


DATED this 1st day of November, 2006.



                                        Respectfully submitted,



                                        STEPHEN E. ROADY
                                        D.C. Bar. No. 926477
                                        JENNIFER C. CHAVEZ
                                        D.C. Bar No. 493421
                                        Earthjustice
                                        1625 Massachusetts Avenue, N.W.
                                        Washington, D.C.  20036
                                        202-667-4500 Telephone
                                        202-667-2356 Fax

                                        Counsel for the Plaintiffs

CO-386-online
10/03

# United States District Court
# For the District of Columbia

Blue Ocean Institute and
Oceana

        vs      Plaintiff

National Marine Fisheries Service

        Defendant

)
)
)
)
)
)
)
)
)
)

Civil Action No._____

## CERTIFICATE RULE LCvR 7.1

I, the undersigned, counsel of record for  Blue Ocean Institute            certify that to the best of my knowledge and

belief, the following are parent companies, subsidiaries or affiliates of  Blue Ocean Institute            which have

any outstanding securities in the hands of the public:

**None.**

These representations are made in order that judges of this court may determine the need for recusal.

Attorney of Record

_____
Signature

J. Chavez D.C. Bar #493421,  S. Roady D.C. Bar  #926477
BAR IDENTIFICATION NO.

Jennifer C. Chavez and Stephen E. Roady
Print Name

Earthjustice, 1625 Massachusetts Ave. NW Suite 702
Address

Washington          D.C.          20036
City                    State          Zip Code

(202) 667-4500
Phone Number

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BLUE OCEAN INSTITUTE<br>250 Lawrence Hill Road<br>Cold Spring Harbor, NY  11724<br><br>CARL SAFINA<br>Post Office Box 2383<br>Amagansett, NY  11930<br><br>    Plaintiffs<br><br>    v.<br><br>CARLOS M. GUTIERREZ, in his official capacity as<br>Secretary of the United States Department of Commerce<br>Department of Commerce, Room 5851<br>14th Street and Constitution Avenue, NW<br>Washington, DC  20230<br><br>NATIONAL MARINE FISHERIES SERVICE,<br>Department of Commerce, Room 14555<br>1315 East-West Highway<br>Silver Spring, MD  20910<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      The plaintiffs Blue Ocean Institute and Carl Safina hereby challenge the defendants' failure to adopt a fishery management plan that prevents overfishing of the western Atlantic bluefin tuna ("bluefin") and minimizes the unintentional catch ("bycatch") of bluefin that is depleting its already overfished population.  In particular, the plaintiffs challenge defendants' arbitrary and capricious rejection of a recent petition that sought protection for spawning members of the bluefin population.

1

2.    The bluefin population has been in steep decline for more than twenty-five years. Defendants (hereinafter "the Fisheries Service") officially declared bluefin tuna to be an overfished species in 1997. The latest estimates of the bluefin population show that it is now at its lowest point ever, and that it is hovering on the brink of collapse.

3.    Despite the precarious status of this fish, and in clear violation of the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"), the Fisheries Service has refused to protect western Atlantic bluefin on their spawning grounds in the Gulf of Mexico. In particular, in a final rule governing the management of bluefin and other "highly migratory species" of fish dated October 2, 2006, the Fisheries Service ignored the best available science and rejected a petition filed by the Blue Ocean Institute and other conservation groups and decided not to order any reduction in fishing effort by longline fishermen in the Gulf of Mexico that is killing as "bycatch" depleted bluefin in their known spawning area. This decision by the Fisheries Service rejected specific practicable fishery management measures supported by the best available science that would help prevent continued overfishing of the bluefin.

## APPLICABLE STATUTES, JURISDICTION, AND VENUE

4.    This action arises under the MSA, 16 U.S.C. §§ 1801-1883; the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f; and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

5.    This Court has jurisdiction over this action pursuant to the MSA. That statute provides that "[t]he district courts of the United States shall have exclusive jurisdiction over any case or controversy arising under" the MSA. 16 U.S.C. § 1861(d). The MSA also provides that regulations promulgated under that statute shall be subject to judicial review "if a petition for such review is filed within 30 days after the date on which the regulations are promulgated or the

2

action is published in the Federal Register, as applicable." 16 U.S.C. § 1855(f). The Fisheries

Service published the final rule implementing the Consolidated Highly Migratory Species

(HMS) Fishery Management Plan (FMP) on October 2, 2006 in the Federal Register. See 71 Fed.

Reg. 58058. Plaintiffs are filing this Complaint within thirty (30) days after the publication of

that final rule.

      6.      This Court also has federal question jurisdiction over this action pursuant to 28

U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising

under the . . . laws . . . of the United States" and 28 U.S.C. § 1361, which grants the district

courts "original jurisdiction of any action in the nature of mandamus to compel an officer or

employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

      7.      Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because the

Fisheries Service defendants are located in this district and a substantial part of the events or

omissions giving rise to the claim occurred here.

      8.      This Court may issue a declaratory judgment in this case pursuant to the

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and may grant relief pursuant to the MSA,

16 U.S.C. §§ 1861(d) and 1855(f), as well as the APA, 5 U.S.C. § 706.

## DESCRIPTION OF THE PARTIES

      9.      Plaintiff Blue Ocean Institute (the Institute) is a non-profit conservation

organization headquartered in Cold Spring Harbor, New York dedicated to developing

conservation solutions for ocean resources. To further this goal, the Blue Ocean Institute

promotes public awareness, education, and citizen involvement in the conservation of marine

wildlife and resources and supports related programs. Working through science, literature, and

art, the Institute broadens the number of people who are aware of the importance of ocean

3

wildlife. The work of the Institute includes the development of innovative solutions to minimize bycatch of sea turtles and birds by longline fishing gear. Institute staff members share their expertise at symposia and conferences, publish reports and scientific papers, and speak for ocean life through popular media such as television, documentaries, and magazines. The Institute conducts research and writes about western Atlantic bluefin tuna. The President of the Institute, Carl Safina, has published several books that address ocean conservation; these include *Song for the Blue Ocean*. Published in 1998, *Song for the Blue Ocean* included a detailed description of the plight of the bluefin. The interests and work of the Institute in ocean conservation are directly and adversely affected by the failure of the Fisheries Service to prevent overfishing of the western Atlantic bluefin tuna. By allowing continued overfishing and bycatch of bluefin, the Fisheries Service is reducing the already depleted population of that fish to even more dangerously low levels and contributing to the possible collapse of that fish population that has recently been shown to harbor unique genetic diversity. The interests of the Institute in protecting western Atlantic bluefin tuna, and in observing, writing about, and educating the public concerning western Atlantic bluefin tuna, have been adversely affected by the failures of the Fisheries Service to prevent overfishing and to minimize bycatch of that fish. Moreover, unless the relief sought in this complaint is granted, those interests will continue to be adversely affected and irreparably injured by the Fisheries Service's unlawful failure to perform its non-discretionary duties under the MSA, NEPA, and the APA.

10.    Plaintiff Carl Safina is a writer and scientist who currently serves as President of the Blue Ocean Institute. Dr. Safina has been actively involved in efforts to protect and conserve western Atlantic bluefin tuna for more than a decade. He has served as a member of the Mid-Atlantic Fishery Management Council and has attended numerous government meetings

convened to address the regulation of the bluefin, including meetings held both in the United

States and abroad in connection with the deliberations of the International Commission for the

Conservation of Atlantic Tunas. He regularly communicates with the Fisheries Service

concerning the need to protect the bluefin. He has fished for and observed bluefin in United

States ocean waters, beginning in the late 1960's. He is the author of *Song for the Blue Ocean*, a

book published in 1998 that devotes itself in part to describing the depleted condition of the

bluefin and the need to take action to conserve the bluefin population. Dr. Safina intends to

continue to work on protecting the bluefin population, and to observe and write about the

bluefin. Dr. Safina's interests in protecting western Atlantic bluefin are directly and adversely

affected by the failure of the Fisheries Service to prevent overfishing of the western Atlantic

bluefin tuna stock. By allowing continued overfishing and bycatch of bluefin, the Fisheries

Service is reducing the already depleted population of that fish to even more dangerously low

levels and contributing to the possible collapse of that fish population that has recently been

shown to harbor unique genetic diversity. Dr. Safina is concerned that the Fisheries Service'

actions and failures to act as described in this Complaint are resulting in lowered bluefin

populations in the Gulf of Mexico and along the east coast of the United States. As a result, Dr.

Safina's continuing interests in observing, studying, and fishing for western Atlantic bluefin tuna

have been adversely affected by the failures of the Fisheries Service to prevent overfishing and

to minimize bycatch of bluefin. Among other things, the Fisheries Service's failure to halt

overfishing of bluefin has caused bluefin to be effectively unavailable for recreational fishing of

the type Dr. Safina engages in. Moreover, unless the relief sought in this complaint is granted,

those interests will continue to be adversely affected and irreparably injured by the Fisheries

Service's unlawful failure to perform its non-discretionary duties under the MSA, NEPA, and the APA.

11.     Defendant Carlos M. Gutierrez is Secretary of the United States Department of Commerce. He is sued in his official capacity as the chief officer of the Department charged with overseeing the proper administration and implementation of the MSA, including those MSA provisions that require an end to overfishing and that mandate the minimization of bycatch.

12.     Defendant National Marine Fisheries Service ("NMFS") is an agency of the United States Department of Commerce that has been delegated the responsibility to issue regulations implementing fishery management plans ("FMPs") for highly migratory fish stocks such as the western Atlantic bluefin tuna. NMFS is the United States government agency with primary responsibility to ensure that the MSA's requirements are followed and enforced, including the requirements to end overfishing, to rebuild overfished populations of fish, and to minimize bycatch.

## LEGAL AND FACTUAL BACKGROUND

### Legal Framework for Fisheries Management of Atlantic bluefin tuna

13.     The MSA establishes a system for conserving and managing fish populations in the exclusive economic zone of the United States, which generally extends from the boundaries of state waters to 200 miles offshore. The MSA requires the Fisheries Service to conserve and manage fish populations pursuant to a number of "National Standards" and certain other requirements.

14.     Bluefin tuna are classified as a "Highly Migratory Species" ("HMS") under the MSA. For HMS such as bluefin tuna, the MSA charges the Fisheries Service with direct responsibility for preparing an FMP for purposes of conservation and management. See 16

U.S.C. §§ 1802(20), 1854(g)(1), 1852(a)(3). All FMPs and regulations implementing FMPs,

including the FMP for HMS, are subject to final review and approval of the Fisheries Service to

ensure that they comply with the requirements of the MSA, as well as with other applicable laws

and requirements. 16 U.S.C. § 1854(a), (b).

15.    In enacting the MSA, Congress found that:

> Certain stocks of fish have declined to the point where their survival is
> threatened, and other stocks of fish have been so substantially reduced in
> number that they could become similarly threatened as a consequence of
> (A) increased fishing pressure, (B) the inadequacy of fishery resource
> conservation and management practices and controls....

> Fishery resources are finite but renewable. If placed under sound
> management before overfishing has caused irreversible effects, the fisheries
> can be conserved and maintained so as to provide optimum yields on a
> continuing basis.

16 U.S.C. § 1801(a)(2), (5).

16.    National Standard One of the MSA requires that "[c]onservation and management

measures shall prevent overfishing while achieving, on a continuing basis, the optimum yield

from each fishery . . . ." 16 U.S.C. § 1851(a)(1).

17.    National Standard Two of the MSA requires that "[c]onservation and

management measures shall be based upon the best scientific information available." 16 U.S.C.

§ 1851(a)(2).

18.    The MSA requires that the Fisheries Service identify overfished fish populations

and manage those populations by attaining the optimum yield that will rebuild them to a healthy

population level. 16 U.S.C. § 1802(28)(C) (optimum yield for an overfished fishery provides for

rebuilding the population); 16 U.S.C. § 1853(a)(10) (FMPs must "specify objective and

measurable criteria for identifying when the fishery to which the plan applies is overfished" and

"contain conservation and management measures to prevent overfishing or end overfishing and

rebuild the fishery"); 16 U.S.C. § 1854(e) (requirements to identify and rebuild overfished

fisheries as soon as possible).

19.    National Standard Nine of the MSA requires that conservation and management

measures must, to the extent practicable, avoid or minimize bycatch and bycatch mortality. 16

U.S.C. § 1851(a)(9).

20.    The MSA also requires that FMPs must

> establish a standardized reporting methodology to assess the amount and type of
> bycatch occurring in the fishery, and include conservation and management
> measures that, to the extent practicable and in the following priority --
> (A) minimize bycatch; and
> (B) minimize the mortality of bycatch which cannot be
> avoided[.]

16 U.S.C. § 1853(a)(11).

21.    Because some Atlantic bluefin spend part of their lives in international waters,

they are subject to regulation by the International Commission for the Conservation of Atlantic

Tunas ("ICCAT").   ICCAT establishes bluefin quotas for each member country; thus United

States fishermen are limited to catching the amount of western Atlantic bluefin allocated to this

country's quota.

22.    The Atlantic Tunas Convention Act ("ATCA") is the federal statute that – along

with the MSA – provides authority to the Fisheries Service to manage bluefin tuna in

conformance with quotas established by ICCAT.   See 16 U.S.C. § 971.

23.    In pertinent part, ATCA provides that the defendant Secretary of Commerce shall

promulgate regulations that are "necessary and appropriate" to carry out the recommendations of

ICCAT that establish the western Atlantic bluefin quota for the United States fishing fleet.   See

16 U.S.C. § 971d(c)(1)(A).   In addition, ATCA requires that such regulations "shall, to the extent

practicable, be consistent with fishery management plans [FMPs] prepared and implemented

8

under" the MSA. 16 U.S.C. § 971d(c)(1)(C). ATCA also provides that no such regulations "may have the effect of increasing or decreasing any allocation or quota of fish or fishing mortality level" set by ICCAT. 16 U.S.C. § 971d(c)(3).

24.    NEPA requires the Fisheries Service to analyze the environmental impacts of a reasonable range of alternative measures for ending overfishing and rebuilding an overfished stock of fish, as well as for avoiding or minimizing bycatch, when it prepares an FMP. 42 U.S.C. § 4332(2)(C). Thus, NEPA requires the Fisheries Service to analyze the environmental impacts of the HMS FMP and consider alternatives to the proposed action with respect to bluefin, including alternatives that might mitigate the impacts of the FMP on bluefin, while developing the scientific information and analysis necessary to analyze those impacts and alternatives.

25.    The APA requires courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law," and to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

**Overfishing and Depletion of the Bluefin tuna**

26.    Western Atlantic bluefin tuna are one of the most important predators in the oceans. They are large (up to ten feet in length and 1,500 pounds), fast (able to reach swimming speeds of 40 mph), and capable of regulating their body temperature to allow themselves to hunt in both warm and cold waters. They spawn in the Gulf of Mexico annually, primarily between the months of March and June, and then spend much of their early years foraging off the east coast of the United States and Canada. The bluefin in the Gulf of Mexico have been shown to have fidelity to the Gulf for up to three years and harbor unique molecular genotypes indicative of a separate bluefin population.

27.     Bluefin tuna are extraordinarily valuable fish to catch. The demand for raw bluefin tuna -- particularly in high-end sashimi markets in Japan -- is so great that individual bluefin have been known to fetch as much as $30,000, or $40,000, or more. As a result, there is intense fishing pressure to catch these fish -- and their total populations have been falling steadily for the past 20 years.

28.     In recognition of the depleted state of the bluefin, the Fisheries Service officially identified them as "overfished" under the MSA on September 30, 1997.

29.     Bluefin tuna are regulated at both the national and international level. At the international level, they are subject to the jurisdiction of the International Commission for the Conservation of Atlantic Tunas (ICCAT). Membership of ICCAT includes the United States, Japan, Spain, Canada, and a host of other countries that fish for tuna in the Atlantic Ocean. Based upon advice from its scientific advisory committee, ICCAT has tried to manage the fishing for these tuna in a fashion that ensures it will survive and support a sustainable fishery. Thus, for several decades, ICCAT and its scientists have made an effort to track the population of both western Atlantic bluefin tuna and eastern Atlantic bluefin tuna, and ICCAT has allocated quotas to each member country that allow each country to catch a certain amount of these fish.

30.     ICCAT makes certain management recommendations for specific fish species, including bluefin tuna. Pursuant to the Atlantic Tunas Convention Act ("ATCA"), the United States is tasked to maintain consistency with these ICCAT recommendations. See 16 U.S.C. § 971d(c)(1)(A). In 1999, ICCAT recommended that no fishing be allowed to target bluefin tuna in their Gulf of Mexico spawning area during their spawning season. Thus, the Fisheries Service has prohibited directed fishing for bluefin in the Gulf of Mexico. See 50 C.F.R. § 285.31(a)(30).

31.     On the national level, the Fisheries Service is required by the relevant federal statutes (MSA and ATCA) to conform with the quotas set by ICCAT, to prevent overfishing of bluefin tuna and to avoid or minimize bycatch mortality of bluefin. Accordingly, both in its negotiations at ICCAT and in its regulations authorizing fishing in federal waters, the Fisheries Service must take care to protect against quotas that allow an excessive amount of fishing. In connection with these efforts, the MSA further requires the Fisheries Service to rely upon the best available science that describes the status of the population and its chances of survival on a sustainable basis. In April of 1999, the Fisheries Service issued a fishery management plan ("FMP") for bluefin in an effort to end overfishing and rebuild the bluefin population. That FMP adopted the bluefin rebuilding plan recommended by ICCAT.

32.     Neither the ICCAT international management effort nor the domestic actions by the Fisheries Service have halted the steady decline in the population of the western Atlantic bluefin. In 2004, ICCAT reported that the spawning stock biomass of western Atlantic bluefin had decreased by at least 80% since 1970. The most recent assessment published by ICCAT shows both that the bluefin population is at its lowest level ever, and that fishing pressure is at its highest point ever.

33.     Indicative of the steep bluefin population decline is that United States fishers have been unable to catch the quota allocated to them by ICCAT for the past four years. During the most recent fishing season U.S. bluefin fishers caught less than 15% of their ICCAT quota.

34.     New scientific data published in the journal Nature in the spring of 2005 confirmed that spawning-age western Atlantic bluefin tuna were present in United States waters of the Gulf of Mexico during the months of January through June, and that they were spawning during the period between March and June. The Nature paper conclusively established that

11

longline fishing vessels kill these bluefin as "bycatch" while those vessels are fishing for yellowfin tuna in the bluefin spawning area. This Nature article pointed out that longline fishers targeting yellowfin tuna were killing numerous spawning bluefin in the Gulf of Mexico because incidentally caught bluefin were physiologically stressed due to elevated ocean temperatures in the Gulf during spawning season and therefore died at very high rates shortly after being caught. The Nature article further identified the particular area of the Gulf occupied by the bluefin and stated that prohibiting yellowtail tuna longline fishing in the bluefin spawning area would eliminate this often fatal bycatch of spawning bluefin.

35.    On the basis of these data and the article in Nature, the Blue Ocean Institute and several other conservation groups submitted a petition on June 8, 2005, to defendant Gutierrez. The June 2005 petition emphasized that longline fishing in the Gulf of Mexico bluefin spawning area kills significant numbers of bluefin, depletes the bluefin population, and cripples the potential of the bluefin to rebuild to a healthy level. Accordingly, the June 2005 petition requested defendant Gutierrez to take immediate action to stop all longline fishing in the Gulf of Mexico bluefin spawning areas during spawning season. This June 2005 petition also requested defendant Gutierrez to initiate a rulemaking designed to permanently prohibit all fishing activity that can catch bluefin tuna (either intentionally, or incidentally as "bycatch") in their spawning areas in the Gulf of Mexico during their spawning season.

36.    In response to the petition, the Fisheries Service declined to take immediate action to prevent illegal bycatch of spawning bluefin in the Gulf, and promised to address the problem and further consider the petition for closure in connection with its Draft Fishery Management Plan for Highly Migratory Species ("HMS FMP"). The HMS FMP looked at a number of actions relating to the management not of only bluefin tuna, but also other so-called "highly

migratory species." In an environmental impact statement ("EIS") prepared by the Fisheries Service in connection with the HMS FMP during 2005 and 2006, the Fisheries Service acknowledged that bluefin tuna are overfished and subject to continued overfishing, but declined to establish a fishing closure of the bluefin spawning area in the Gulf of Mexico.

37.    In comments on this EIS, the plaintiffs advised the Fisheries Service that there was no sound basis for its conclusion. Among other things, the plaintiffs provided evidence of several relevant factors that the Fisheries Service had failed to consider. These relevant factors included: (a) the Fisheries Service had disregarded evidence of the disproportionately high biological importance of protecting spawning bluefin; (b) the Fisheries Service had ignored evidence that bluefin only mature between the ages of 10 and 12 years (several years later than the time the Fisheries Service had assumed) and therefore require protection for a longer period of time than Fisheries Service was allowing; (c) the Fisheries Service had rejected evidence that western Atlantic bluefin tuna spawn exclusively in the Gulf of Mexico; and (d) the Fisheries Service had overlooked evidence that bluefin caught in their spawning area in the Gulf of Mexico during spawning season are likely to experience a high rate of mortality due to their unique physiology and the fact that they are highly stressed by spawning in the warm waters of the Gulf.

38.    The plaintiffs also noted in their comments that the Fisheries Service had failed to adequately analyze the effects of closing longlining in the bluefin spawning area in the Gulf of Mexico by, among other things, failing to develop a realistic model that addressed the potential redistribution of fishing effort and by failing to realistically weight the value of bycatch. In addition, the plaintiffs advised the Fisheries Service that it had wrongly failed to address their proposal for a cap on bycatch in the longline fishery in the Gulf.

39.     A recent paper by Fisheries Service scientists supports the view that bluefin begin to breed between the ages of 10 to 12 years. This paper is consistent with the April 2005 Nature article and with the comments of the plaintiffs on the EIS, and contrasts with the Fisheries Service's policy of regulating bluefin on the assumption that bluefin begin to breed at 8 years.

40.     The Fisheries Service did not decide to take steps to protect bluefin in response to the plaintiffs' comments. Instead, the Fisheries Service published the final rule implementing the HMS FMP rule on October 2, 2006 that refused to institute any closure of longline fishing in the bluefin spawning area in the Gulf of Mexico during spawning season, or otherwise to take any action to halt the collapse of the western Atlantic bluefin population.

41.     As a result of the decision by the Fisheries Service to violate the MSA, deny the plaintiffs' petition, and refuse to institute a fishing closure in the bluefin spawning area of the Gulf of Mexico during bluefin spawning season, additional bluefin were killed as bycatch by longline fishers fishing in that area in 2006. More bluefin can be expected to die in that spawning area in 2007, and in subsequent years, until the Fisheries Service reduces the fishing pressure in that area during bluefin spawning season. These bluefin mortalities contribute to continued overfishing and harm the capacity of the western Atlantic bluefin tuna to survive and to rebuild as a healthy and sustainable fish population.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### THE HMS FMP FAILS TO PREVENT OVERFISHING OF BLUEFIN TUNA

42.     The plaintiffs reallege and incorporate by reference paragraphs 1- 41 of this Complaint in this First Claim for Relief.

43.    National Standard 1 of the MSA requires that "[c]onservation and management measures shall prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery for the United States fishing industry." 16 U.S.C. § 1851(a)(1).

44.    The MSA requires the Fisheries Service to promulgate and implement a fishery management plan that prevents overfishing and rebuilds overfished fish populations within not more than 21 months after they identify those populations as being overfished. 16 U.S.C. § 1854(e).

45.    The Fisheries Service identified bluefin tuna as overfished on September 30, 1997, and issued a fishery management plan addressing overfishing and rebuilding for bluefin in April of 1999. Notwithstanding these actions, the overfished bluefin population has steadily declined. In fact, the Fisheries Service acknowledged that western Atlantic bluefin tuna remain overfished and are subject to continued overfishing when they published the EIS accompanying the final rule implementing the HMS FMP on October 2, 2006.

46.    In their final rule implementing the HMS FMP on October 2, 2006, the Fisheries Service refused to take action to minimize bluefin bycatch or avoid the killing of spawning bluefin as bycatch in their spawning grounds located in the Gulf of Mexico.

47.    The Fisheries Service's October 2, 2006 final rule implementing the HMS FMP fails to prevent overfishing and promote rebuilding of the bluefin tuna population, notwithstanding the deadlines and requirements contained in the MSA.

48.    These actions and failures to act by the Fisheries Service violate the MSA.

49.    These actions and failures to act by the Fisheries Service are arbitrary, capricious, and contrary to law in violation of the APA. These actions and failures also constitute actions that have been both unlawfully withheld and unreasonably delayed in violation of the APA.

50.     These violations of the MSA and the APA by the Fisheries Service threaten the

plaintiffs with irreparable injury for which they have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF:
## THE HMS FMP FAILS TO RELY UPON THE BEST
## SCIENTIFIC INFORMATION AVAILABLE

51.     The plaintiffs reallege and incorporate by reference the allegations contained in

paragraphs 1 - 41 of this Complaint in this Second Claim for Relief.

52.     National Standard 2 of the MSA requires that "[c]onservation and management

measures shall be based upon the best scientific information available." 16 U.S.C. § 1851(a)(2).

53.     The best scientific information available demonstrates that: (i) the population of

bluefin tuna is at its lowest level ever; (ii) the Gulf of Mexico is a discrete spawning ground for

western Atlantic bluefin tuna; (iii) the average age at which bluefin tuna become sexually mature

is between 10 and 12 years; (iv) spawning bluefin are being killed as bycatch in their spawning

grounds in the Gulf of Mexico and bluefin subject to bycatch in the Gulf spawning grounds

suffer a high rate of mortality; (v) any redistribution of fishing effort resulting from closing the

Gulf of Mexico bluefin spawning area to longline fishing during bluefin spawning season would

not occur in the manner assumed by the Fisheries Service; and (vi) closing the Gulf of Mexico

bluefin spawning area to longline fishing during bluefin spawning season would reduce mortality

of bluefin and help to prevent overfishing of bluefin.

54.     In their final rule implementing the HMS FMP on October 2, 2006, the Fisheries

Service disregarded the best scientific information available and refused to close the Gulf of

Mexico bluefin spawning area to fishing during bluefin spawning season.

55.    The Fisheries Service's October 2, 2006 final rule implementing the HMS FMP therefore is not based upon the best scientific information available.

56.    These actions and failures to act by the Fisheries Service violate the MSA.

57.    These actions and failures to act by the Fisheries Service are arbitrary, capricious, and contrary to law in violation of the APA. These actions and failures also constitute actions that have been both unlawfully withheld and unreasonably delayed in violation of the APA.

58.    These violations of the MSA and the APA by the Fisheries Service threaten the plaintiffs with irreparable injury for which they have no adequate remedy at law.

### THIRD CLAIM FOR RELIEF:
### THE HMS FMP FAILS TO AVOID OR MINIMIZE
### BYCATCH OF BLUEFIN TUNA

59.    The plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 - 41 of this Complaint in this Third Claim for Relief.

60.    National Standard Nine of the MSA requires that conservation and management measures must, to the extent practicable, avoid or minimize bycatch and bycatch mortality. 16 U.S.C. § 1851(a)(9).

61.    The MSA also requires that FMPs must "establish a standardized reporting methodology to assess the amount and type of bycatch occurring in the fishery" and include practicable measures to minimize bycatch and bycatch mortality. 16 U.S.C. § 1853(a)(11).

62.    In their final rule implementing the HMS FMP on October 2, 2006, the Fisheries Service refused to take the actions necessary to minimize or avoid bycatch of bluefin tuna in the bluefin spawning area of the Gulf of Mexico, and failed to establish a standardized reporting methodology for that bycatch. In that final rule, the Fisheries Service refused to consider establishing a cap on bycatch of bluefin, despite the fact that such an approach would be a

17

practicable method for reducing bluefin bycatch, and despite the fact that numerous spawning bluefin are being killed as bycatch in the Gulf of Mexico.

63. The Fisheries Service's October 2, 2006 final rule implementing the HMS FMP therefore does not comply with the requirements of National Standard Nine and the bycatch reporting requirements of the MSA.

64. These actions and failures to act by the Fisheries Service violate the MSA.

65. These actions and failures to act by the Fisheries Service are arbitrary, capricious, and contrary to law in violation of the APA. These actions and failures also constitute actions that have been both unlawfully withheld and unreasonably delayed in violation of the APA.

66. These violations of the MSA and the APA by the Fisheries Service threaten the plaintiffs with irreparable injury for which they have no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF:
### THE HMS FMP FAILS TO COMPLY WITH
### THE NATIONAL ENVIRONMENTAL POLICY ACT

67. The plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 – 41 of this Complaint in this Fourth Claim for Relief.

68. Section 102(2)(C) of NEPA requires the Fisheries Service to prepare a detailed environmental impact statement ("EIS") whenever they engage in a major federal action significantly affecting the quality of the human environment. 42 U.S.C. § 4332(2)(C). The EIS must carefully assess the environmental impacts of the action. The final rule issued on October 2, 2006 by Fisheries Service to implement the HMS FMP is a major federal action that requires an EIS.

69. Section 102(2)(E) of NEPA requires the Fisheries Service to consider alternatives in the course of preparing an EIS. 42 U.S.C. § 4332(2)(E).

70.     NEPA regulations of the Council on Environmental Quality require the Fisheries Service to "rigorously explore and objectively evaluate all reasonable alternatives" to the proposed action.  40 C.F.R. § 1502.14.

71.     The Fisheries Service's own internal regulation implementing NEPA requires it to evaluate reasonable alternatives to proposed actions.  See NOAA Administrative Order 216-6.

72.     The EIS prepared by the Fisheries Service in connection with the HMS FMP and the final rule implementing that FMP fails to carefully consider the impacts of allowing numerous bluefin to be killed in the Gulf of Mexico and does not consider available alternatives to allowing longlining to continue in the bluefin spawning area of the Gulf during bluefin spawning season.  In addition, the EIS does not adequately analyze the effects of closing longlining in the Gulf spawning area for bluefin.

73.     In particular, the EIS for the HMS FMP does not properly consider that the Gulf of Mexico is a discrete spawning ground for western Atlantic bluefin tuna, and that the average age at which bluefin tuna become sexually mature is between 10 and 12 years.  In addition, the EIS completely fails to consider the use of a bycatch cap that would limit the number of bluefin killed incidentally in the yellowfin longline fishery that takes place in the bluefin spawning area of the Gulf of Mexico.  The EIS for the HMS FMP also ignores recent models that examine the possible redistribution of fishing effort resulting from a closure of that yellowfin longline fishery.

74.     The failure by the Fisheries Service to adequately analyze the adverse effects upon bluefin of the Fisheries Service policy that allows longline fishing to continue in bluefin spawning areas in the Gulf of Mexico, and its additional failure to consider available alternatives to that policy, violates NEPA and constitutes an arbitrary and capricious action that violates the APA.

19

75.    These violations of NEPA and the APA by the Fisheries Service threaten the plaintiffs with irreparable injury for which they have no adequate remedy at law.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiffs respectfully request this Court to enter the following relief:

1.    Declare that the Fisheries Service has violated the MSA and the APA by failing to halt overfishing of bluefin tuna in the Gulf of Mexico and failing to minimize bycatch of bluefin in the Gulf.

2.    Declare that the Fisheries Service has violated the MSA and the APA by failing to establish a plan to rebuild the overfished population of bluefin tuna in the Gulf of Mexico.

3.    Declare that the Fisheries Service's approval of the October 2, 2006 final rule implementing the HMS FMP with respect to bluefin tuna is arbitrary, capricious, and contrary to law, in violation of the APA.

4.    Declare that the Fisheries Service has violated NEPA by preparing an EIS for the HMS FMP that (a) fails to adequately analyze the adverse effects upon bluefin of the Fisheries Service policy that allows longline fishing in bluefin spawning areas in the Gulf of Mexico during bluefin spawning season and (b) fails to consider mitigation measures and alternatives to that policy.

5.    Order the Fisheries Service to take immediate action to stop all fishing-induced mortality of bluefin in their Gulf of Mexico spawning areas during their spawning season.

6.    Further order the Fisheries Service to initiate a rulemaking designed to permanently prohibit all fishing activity that can catch bluefin tuna (either intentionally, or

20

incidentally as "bycatch") in their spawning areas in the Gulf of Mexico during their spawning season.

7.    Order the Fisheries Service to prepare a supplemental environmental impact statement for the HMS FMP that adequately analyzes the adverse effects upon bluefin of longline fishing in bluefin spawning areas in the Gulf of Mexico during bluefin spawning season and that considers alternatives to the Fisheries Service policy that allows such fishing.

8.    Provide plaintiffs all their reasonable costs, fees, and attorney fees.

9.    Provide such other and further relief as the Court deems just and proper.


DATED this 1st day of November, 2006.



Respectfully submitted,


STEPHEN E. ROADY
D.C. Bar. No. 926477
JENNIFER C. CHAVEZ
D.C. Bar No. 493421
Earthjustice
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036
202-667-4500 Telephone
202-667-2356 Fax

Counsel for the Plaintiffs

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Blue Ocean Institute and Carl Safina

88888

## DEFENDANTS

Carlos M. Gutierrez
and
National Marine Fisheries Service

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Suffolk Co. NY
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Montgomery Co.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Jennifer C. Chavez
Stephen E. Roady
Earthjustice
1625 Massachusetts Ave. NW
Washington, DC 20036
(202) 667-4500

CASE NUMBER  1:06CV01869

JUDGE: Henry H. Kennedy

DECK TYPE: Administrative Agency Review

DATE STAMP: 11/██/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust

- ☐ 410 Antitrust

### ○ B. Personal Injury/ Malpractice

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ● C. Administrative Agency Review

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes:
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☒ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

## ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

4

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** <br> ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** <br> ☐ **890 Other Statutory Actions** (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans** (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** <br> ☐ **720 Labor/Mgmt. Relations** <br> ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** <br> ☐ **740 Labor Railway Act** <br> ☐ **790 Other Labor Litigation** <br> ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** <br> ☐ **443 Housing/Accommodations** <br> ☐ **444 Welfare** <br> ☐ **440 Other Civil Rights** <br> ☐ **445 American w/Disabilities- Employment** <br> ☐ **446 Americans w/Disabilities- Other** | ☐ **110 Insurance** <br> ☐ **120 Marine** <br> ☐ **130 Miller Act** <br> ☐ **140 Negotiable Instrument** <br> ☐ **150 Recovery of Overpayment & Enforcement of Judgment** <br> ☐ **153 Recovery of Overpayment of Veteran's Benefits** <br> ☐ **160 Stockholder's Suits** <br> ☐ **190 Other Contracts** <br> ☐ **195 Contract Product Liability** <br> ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting** (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

NEPA, MSA and APA. Challenge to governments failure to prevent overfishing.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ [_____]   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 11/01/06   SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.