# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**BLUE OCEAN INSTITUTE, et al.,**    )
    )
    **Plaintiffs,**    )
    )
    **v.**    )    **No. 1:06-CV-01869-HHK**
    )
**CARLOS M. GUTIERREZ, et al.,**    )
    )
    **Defendants.**    )
_____)

## PLAINTIFFS' MOTION TO COMPEL COMPLETION
## OF THE ADMINISTRATIVE RECORD

The plaintiffs respectfully move this Court for an Order directing the defendants to complete the administrative record in this case by filing the full record within thirty (30) days following entry of this Court's Order granting this motion to compel.

As the plaintiffs explain in the accompanying memorandum, defendants have unlawfully restricted the record by omitting documents that were before the defendant National Marine Fisheries Service ("Fisheries Service" or "NMFS") during preparation of that agency's response to a Petition filed by plaintiffs in June of 2005. That Petition requested NMFS to protect the critically depleted population of bluefin tuna by prohibiting certain fishing in the Gulf of Mexico during bluefin spawning season. By restricting the record, the defendants have deprived the plaintiffs and this Court of the opportunity for meaningful judicial review of defendants' failure to protect bluefin tuna from a possible population collapse.

Pursuant to Local Civil Rule 7 (m), counsel for the plaintiffs conferred with counsel for the defendants concerning this motion during the first two weeks of February, 2007.  Counsel for the plaintiffs and counsel for the defendants have been unable to agree about the disposition of this motion.

For the reasons outlined in the attached memorandum, the plaintiffs respectfully request that the Court grant this motion and enter an Order in the proposed form attached, directing defendants to complete the administrative record within thirty (30) days after entry of the Order.

Dated:  February 23, 2007

Respectfully submitted,

/s/  Jennifer C. Chavez_____
Stephen E. Roady
D.C. Bar. No. 926477
Jennifer C. Chavez
D.C. Bar No. 493421
Earthjustice
1625 Massachusetts Avenue, N.W.
Washington, D.C.  20036
202-667-4500 Tel; 202-667-2356 Fax
Counsel for the Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

)
**BLUE OCEAN INSTITUTE, et al.,**　　　　　)
)
　　　　**Plaintiffs,**　　　　　　　　)
)
　　　　　　**v.**　　　　　　　　　)　　No.  1:06-CV-01869-HHK
)
**CARLOS M. GUTIERREZ, et al.,**　　　　)
)
　　　　**Defendants.**　　　　　　)
_____)


**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD**

　　　　This motion seeks to compel completion of an administrative record that is so incomplete it will hamper effective judicial review of defendants' unlawful failure to protect the critically depleted population of western Atlantic bluefin tuna (hereinafter "bluefin") in the Gulf of Mexico.  The incomplete administrative record lacks notes of telephone conversations, informal notes of meetings and discussions, and emails, generated by defendants or their agents in response to a June, 2005 Petition filed by the plaintiffs that requested a closure of certain fishing in the Gulf that kills many spawning bluefin.  Thus, the record does not provide the required comprehensive documentation of all materials directly or indirectly considered or relied upon by the defendants in rejecting that Petition and deciding to allow spawning bluefin to continue to be killed in the Gulf despite the fact that the bluefin population is at an all time low.  As they have already been ordered to do by at least one other court in a strikingly similar case, defendants must produce the "whole record" for this Court's review – a record that is more comprehensive than the limited version they have produced thus far.

1

## <u>INTRODUCTION</u>

This case challenges the decision by the defendants (hereinafter "Fisheries Service" or "NMFS") to deny the plaintiffs' request to close longline fishing in part of the Gulf of Mexico annually during bluefin spawning season in order to prevent bluefin from being killed by longline fishing boats. Bluefin tuna are one of the most important predators in the oceans and are extraordinarily valuable; individual bluefin have been known to fetch as much as $30,000 or more. They spawn in the north central portion of the Gulf of Mexico for several months annually. Due to their commercial value, bluefin suffer from intense fishing pressure; fishing has killed so many bluefin that their total population has fallen steadily for 25 years.

Latest estimates show that the bluefin population is at its lowest point ever, and that it is hovering on the brink of collapse. Indicative of the steep bluefin population decline is that United States fishers have been unable to catch the quota allocated to them for the past four years. During the most recent fishing season U.S. bluefin fishers reportedly caught less than 15% of their quota. In fact, the Fisheries Service has admitted in its Answer that "the spawning biomass of western Atlantic bluefin tuna is at its lowest recorded level." Def. Answer at ¶ 2.

In an effort to reverse this dramatic decline in the bluefin population, the Blue Ocean Institute and several other conservation groups submitted a petition on June 8, 2005, to the Fisheries Service. The June 2005 petition emphasized that longline fishing in the Gulf of Mexico bluefin spawning area kills significant numbers of bluefin (largely as "bycatch" while the longline vessels are targeting yellowfin tuna), depletes the bluefin population, and cripples the potential of the bluefin to rebuild to a healthy level. Accordingly, the June 2005 petition requested the Fisheries Service to take immediate action to stop all longline fishing in bluefin spawning areas located in the Gulf of Mexico during spawning season.

Bluefin tuna are classified as a "Highly Migratory Species" ("HMS") under the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§ 1801-1833 ("MSA"). For HMS such as bluefin tuna, the MSA requires the Fisheries Service to prepare a Fishery Management Plan ("FMP") for purposes of conservation and management. *See* 16 U.S.C. §§ 1802(20), 1854(g)(1), 1852(a)(3). The Fisheries Service was starting to prepare a Draft HMS FMP in 2005 that would address bluefin issues. It initially responded to the plaintiffs' Petition by declining to take immediate action to prevent bycatch of spawning bluefin in the Gulf, promising instead to address the problem and further consider the request for a longline fishing closure in connection with that FMP.

In an environmental impact statement ("EIS") prepared by the Fisheries Service in connection with the HMS FMP during 2005 and 2006, the Fisheries Service acknowledged that bluefin tuna are overfished and subject to continued overfishing. Notwithstanding this finding, however, the Fisheries Service published a final rule implementing the HMS FMP rule on October 2, 2006 that rejected the plaintiffs' Petition and refused to institute any closure of longline fishing in the bluefin spawning area in the Gulf of Mexico during spawning season, or otherwise to take any action to forestall the collapse of the western Atlantic bluefin population.

In reaching its decision to reject the Petition, the Fisheries Service purported to consider the effects of closing longline fishing in defined areas of the Gulf of Mexico. The effects of such closures can be to displace fishing effort to other areas of the ocean, and the Fisheries Service based its final decision in part on certain controversial and disputed assumptions about the likely effects of this displaced fishing pressure on bluefin and on other marine life. Controversial issues included data on the actual numbers of bluefin being killed in the Gulf by longline fishing (and the ramifications of under-estimating those numbers), assumptions on distribution of fishing

3

effort following a closure, and hypotheses concerning the effect of displaced fishing effort on bluefin and other species.

The Fisheries Service arrived at its decision to reject the plaintiffs' Petition by a process that involved interactions with government staffers and scientists with varying opinions about the underlying data and assumptions, and included both formal and informal communications bearing on the ultimate question of the efficacy of the spawning area closure sought by the Plaintiffs.  The volume of materials generated in the process and relied upon to various degrees by defendants is significant.  These materials typically include reports, minutes, meeting notes, emails, records of telephone conversations, and related items.

On January 12, 2007, the Fisheries Service filed an administrative record with this Court that fails to document fully the facts on which it relied and also fails to disclose all the factors it considered in deciding to reject the plaintiffs' Petition.  For example, the record is missing email communications and notes of discussions among and between Fisheries Service staff or other government parties relating to the question of the ramifications of under-estimating bluefin mortality in the Gulf and relating to the effects of the closure sought in the Petition.  Indeed, it is limited largely to official decision documents.  Effective judicial review in this case will be hampered unless this Court orders the Fisheries Service to complete the administrative record by adding materials generated in response to the plaintiffs' Petition.  Accordingly, the Plaintiffs respectfully request this Court to compel defendants to file the complete administrative record without delay.

**ARGUMENT**

I.    **The Fisheries Service Must File the Complete Administrative Record, Not Simply Official Rulemaking Documents Reviewed by the Decision Maker**

The Fisheries Service has submitted a record that does not fully reveal its decision-making process in response to the plaintiffs' June 2005 Petition.  This record omits internal staff communications, as well as internal NMFS reviews and analyses leading to the final rule that denies the Petition's request for a closure of longline fishing in the Gulf.  While the defendants have dubbed this collection of official documents the "administrative record," these documents fall short of a legally adequate, acceptable administrative record.

This case is based in part upon the Administrative Procedure Act ("APA"), under which a court may hold unlawful and set aside final agency action, findings, and conclusions that are arbitrary, capricious, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).  Judicial review of APA claims is conducted on the basis of the record that was before the agency at the time the decision was made.  *See, e.g., FPC v. Transcontinental Gas Pipe Line Corp.,* 423 U.S. 326, 331 (1976).  The administrative record must be "the whole record" that was actually before the agency, as opposed to a carefully culled record compiled by agency lawyers to defend the final result in subsequent litigation.  *See* 5 U.S.C. § 706; *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420 (1971) (review is to be based on the "full administrative record"); *Natural Resources Defense Council, Inc. v. Train,* 519 F. 2d 287, 291 (D.C. Cir. 1975) (court "shall review the whole record").

Courts often emphasize the crucial importance of reviewing the entire record, rather than one that is not complete:

> "The whole record" includes everything that was before the agency pertaining to the merits of its decision.  An incomplete record must be viewed as a "fictional account of the actual decision-making process." . . . If the record is not complete, then the

requirement that the agency decision be supported by "the record" becomes almost meaningless.

*Portland Audubon Soc'y v. Endangered Species Comm.,* 984 F.2d 1534, 1548 (9th Cir. 1993)

(citations omitted).  This Circuit has emphasized the particular importance of close record review

in cases such as this, where the agency has engaged in an analysis of rather technical

information:

> The close scrutiny of the evidence is intended to educate the court.  It must understand enough about the problem confronting the agency to comprehend the meaning of the evidence relied upon and the evidence discarded; the questions addressed by the agency and those bypassed; the choices open to the agency and those made.  *The more technical the case, the more intensive must be the court's effort to understand the evidence . . .*

*Ethyl Corp. v. Environmental Protection Agency,* 541 F. 2d 1, 36 (D.C. Cir. 1976) (emphasis

added).  The *Ethyl* court further explained that the purpose of this close review of the complete

administrative record is to "enable the court to determine whether the agency decision was

rational and based on consideration of the relevant factors." *Id.*

Agencies must ensure that the administrative record contains all materials that were

"before the agency at the time the decision was made."  *Environmental Defense Fund, Inc. v.*

*Costle,* 657 F. 2d 275, 284  (D.C. Cir. 1981).  The administrative record "consists of all

documents and materials directly or *indirectly* considered by agency decision makers and

includes evidence contrary to the agency's position."  *Thompson v. Dep't of Labor,* 885 F.2d

551, 555 (9th Cir. 1989) (citations omitted); *accord, Bar MK Ranches v. Yeutter,* 994 F. 2d 735,

739 (10th Cir. 1993); *Int'l Longshormen's Assoc. v. National Mediation Bd.*, 2006 WL 197461 *3

(D.D.C. 2006) (Walton, J.).

At its core, the APA's arbitrary and capricious standard "focuses on the rationality of the

decision making process rather than the rationality of the actual decision." *Olenhouse v.*

*Commodity Credit Corp.,* 42 F.3d 1560, 1575 (10th Cir. 1994); *U.S. v. Garner,* 767 F.2d 104,

116-17 (5th Cir. 1985).  Accordingly, the record must necessarily include drafts, internal

communications, notes, and pertinent studies before the agencies.  *See, e.g., Miami Nation of*

*Indians,* 979 F. Supp. 771, 776 (N.D. Ind. 1996) (ordering inclusion of drafts, notes, comments,

and internal communications in record); *see also Southwest Center for Biological Diversity v.*

*Bureau of Reclamation,* 143 F.3d 515, 522-23 (9th Cir. 1998) (court reviewed drafts included in

administrative record in ruling on summary judgment); *Greenpeace v. NMFS,* 55 F. Supp.2d.

1248, 1265 (W.D. Wash. 1999) (court considered draft in evaluating ESA compliance).

Furthermore, defendants cannot properly limit the administrative record to documents

that the officially designated decision maker personally read and relied on.  Courts have

consistently rejected arguments that documents generated during the decisionmaking process can

be excluded from the record because the agency did not ultimately "rely" on such information.

*See Ad Hoc Metals Coalition v. Whitman,* 227 F. Supp.2d 134, 139 (D.D.C. 2002) (Friedman, J.)

(document not excluded "simply because defendants claim they did not 'rely' on it"); *Miami*

*Nation of Indians,* 979 F. Supp. at 777 ("a document need not literally pass before the eyes of the

final agency decision maker to be considered part of the administrative record") (quoting

Clairton *Sportsmen's Club v. Penn. Turnpike Comm'n,* 882 F. Supp. 455, 464 (W.D. Pa. 1995));

*Envtl. Defense Fund v. Blum,* 458 F. Supp. 650, 661 (D.D.C. 1978) (Gesell, J.) (improper "to

exclude from consideration pertinent material submitted as an integral part of the rulemaking

process or otherwise located in EPA's own files" even if agency did not rely on it).  Similarly,

the agency may not "skew the 'record' for review in its favor by excluding from that 'record'

information in its own files which has great pertinence to the proceeding in question."  *Id.*

In sum, the Fisheries Service cannot categorically exclude from the record whole classes of documents that memorialize and make transparent its decision-making process in rejecting the plaintiffs' request to close fishing in the Gulf of Mexico to protect spawning bluefin, and in essence pick and choose what this Court will see.  Instead, the administrative record must include all materials compiled by the agency "that were before the agency at the time the decision was made."  *James Madison Ltd. v. Ludwig*, 82 F. 3d 1085, 1095 (D.C. Cir. 1996) (internal quotations omitted); *Ad Hoc Metals Coalition,* 227 F. Supp. 2d at 137 (same).

II.    **Completion of the Record Is Essential to this Court's Review of Plaintiffs' Claims in this Case**

The plaintiffs have asked this Court to determine whether the decision by the Fisheries Service to deny their Petition to close longline fishing in the Gulf of Mexico was arbitrary and capricious, an abuse of discretion, or contrary to law, in violation of the MSA, NEPA, and the APA.  For this Court to evaluate whether that decision  was the product of rational decision-making and based on substantial evidence, it is essential that the administrative record consist of the "whole record" created during the decision-making process.  *Citizens to Preserve Overton Park,* 401 U.S. at 420.  As noted above, this Circuit has emphasized that an examination of the way in which the agency dealt with evidence that runs contrary to its decision is especially critical in APA arbitrary and capricious review.  *Ethyl Corp.*, 541 F. 2d at 36.  Accordingly, NMFS cannot exclude from the record documents generated or received during the rulemaking or related processes that undercut the findings and decisions made.  *See Thompson*, 885 F.2d at 555.

The development of the HMS FMP by the Fisheries Service and the concomitant consideration of the relief requested in the plaintiffs' Petition was a lengthy process involving the coordination of numerous interests and players, the interpretation of large amounts of scientific

data, and ultimately, a number of decisions about what management measures for bluefin are necessary to comply with the MSA.  Records of agency communications, notes, and emails play a fundamental role in understanding what happened during the two years it took to develop, propose, and finalize the HMS FMP and its implementing regulations, yet these documents are largely missing from the record in this case.  To the extent that records exist of staff discussions, analyses of crucial factual and technical issues, and evaluations of the likelihood that recommended management measures would succeed in protecting bluefin tuna, they go to the heart of the inquiry into whether the decision is arbitrary, capricious, or contrary to law.

As one example of the type of exchange clearly missing from this record, there was a robust debate among scientists, NMFS staff, and outside reviewers of the HMS FMP concerning the assumptions that underlie the ultimate conclusion of the Fisheries Service to reject a closure of the type sought in the plaintiffs' Petition.  *See, e.g.,* AR Doc. D70 at [un-numbered page] 6 [1] (outside comments criticizing NMFS closure analysis and stating that "[t]he assumptions on redistribution of effort and application of corresponding CPUE [Catch Per Unit Effort] are problematic"); AR Doc. D67 at 3 (outside peer review of NMFS closure analysis noting that the NMFS data do not support its conclusion on redistribution of fishing effort and stating that "assumptions on effort redistribution need to be rigorously tested").  Yet the record produced here is missing emails connected with this debate, as well as any notes of meetings convened to sort out the underlying questions raised or any internal analyses.

Another example of the types of exchanges missing from the record are those related to estimates of the amount of bluefin killed by the longline fishery in the Gulf each year and the implications of those estimates.  The record reveals that the Fisheries Service believes the fishing

---

[1] Administrative record documents are cited as follows: AR Doc. __, at [page] __.

vessel logbook data used to determine the number of bluefin caught in the longline fishery in the

Gulf "may underestimate the absolute amount of bycatch" but that it also believes "the relative

effect of each closure for each species is comparable across alternatives and should not invalidate

or bias the results" of its analysis of the effects of closures.  AR Doc. E17 at 9 (NMFS

Memorandum For the File dated August 29, 2006).  Outside reviewers of the HMS FMP noted

the problem presented by the lack of data on this question.  *See* AR Doc. D70 at [un-numbered

page] 6 (outside comments raising concerns about the statistical validity of "under-reporting" of

catch in logbooks and stating that "[t]here is no doubt that various species will either be non-

reported or under-reported in logbook data").  Yet the record produced by the defendants simply

lacks any of the internal discussions, analyses, and evaluations of factual and technical issues

that would be contained in email exchanges and agency meeting notes on these questions.

　　　　In particular, the record is missing these kinds of discussions with respect to the crucial

decision by the Fisheries Service to treat the under-reporting of bluefin killed in the Gulf as a

factor of no relevance to its final determination on whether to close longline fishing in bluefin

spawning areas.  These records are crucial to understanding the decision-making process and

determining whether the final decision by the Fisheries Service reflects an arbitrary choice that

violates both the MSA and the APA.  *See Washington Toxics Coalition v. United States Dept. of

the Interior,* No. C04-1998C (W.D. Wash. June 14, 2005) (agency must complete record by

adding materials that likely contained evidence contrary to agency conclusion) (Exhibit 1).

　　　　A final illustrative example of relevant materials missing from the record is the lack of

documents reflecting discussions concerning the question whether the Fisheries Service would

establish a means for ranking different species (or different life stages) as a way to assess the

relative importance of mortality for particular species when making decisions on closures.

Outside reviewers joined the plaintiffs in suggesting that the Fisheries Service develop a "decision matrix" for this purpose, but the Service declined to do so. *See* AR Doc. D70 at [un-numbered page] 7 (outside comments suggesting the need for a decision matrix); AR Doc. D67 at 3 (outside peer review agreeing that criteria should be established to evaluate closures that take into account, *inter alia*, the status of the affected fish population). The record establishes that Fisheries Service staff explicitly discussed this question, *see* AR Doc. E20 at 7 (NMFS Memorandum for the File dated September 12, 2006), but it contains no materials reflecting the details of that discussion or of any related communications, reports, or analyses.

Notably, the Fisheries Service has not endeavored to justify its withholding of relevant materials by asserting that they are somehow protected. Although an agency can attempt to withhold documents on the basis that they are subject to a legal privilege, to do so it must submit a privilege log identifying specific documents that have been withheld and providing specific grounds for each document. Even then, the plaintiffs are entitled to challenge those privilege determinations, and a court may find that those documents must be produced for the purposes of pending litigation. *See Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 861-62 (D.C. Cir. 1980) (agency bears burden of proving privilege which can be overridden by litigation needs); *accord Miami Nation of Indians,* 979 F. Supp. at 778-79 (although drafts and internal deliberations are generally part of the administrative record, agency may prove deliberative process privilege applies to discrete documents upon a particularized showing that interests in confidentiality outweigh need for document for judicial review). It is impermissible for the Fisheries Service to close the door to these documents at the outset by excluding whole classes of documents – such as emails – from the administrative record without asserting that they are somehow protected.

11

This Court can decide whether the Fisheries Service acted in an arbitrary and capricious manner, or otherwise violated the APA, MSA, and NEPA, only upon review of the full body of information before the Fisheries Service: "Even though an agency decision may have been supported by substantial evidence, where other evidence in the record detracts from that relied upon by the agency we may properly find that the agency rule was arbitrary and capricious." *Am. Tunaboat Ass'n v. Baldrige*, 738 F.2d 1013, 1016 (9th Cir. 1984). Indeed, as noted by this Circuit, "[r]eview of less than the full administrative record might allow a party to withhold evidence unfavorable to its case..." *Walter O. Boswell Mem'l Hosp. v. Heckler,* 749 F.2d 788, 792 (D.C. Cir. 1984). *See also Mar. Mgmt. Inc. v. United States,* 242 F.3d 1326, 1335 & n.14 (11th Cir. 2001) (finding bad faith in government's failure to include contrary evidence in the administrative record). However characterized, the Fisheries Service has failed to file the complete administrative record in this case, and should be ordered to do so.

In sum, the Fisheries Service has compiled an incomplete record because it has failed to present the Court with the "whole" administrative record. The "whole" administrative record should include "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Int'l Longshormen's Assoc. v. National Mediation Bd.,* 2006 WL *3 (D.D.C. 2006) (Walton, J.) (internal citations omitted). Therefore, the Fisheries Service must now be required to complete the record in this litigation so that the Court has before it "the full administrative record" that was part of the decision-making process. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971).

### III.    Other Courts Have Rejected Incomplete Records Filed by the Fisheries Service and Relied Upon Materials of the Kind Omitted from this Record

At least one court has already rejected the precise approach taken here by the Fisheries Service and ordered that a deficient administrative record be made complete.  In *Coastal Conservation Assoc. v. Gutierrez,* Nos. H-05-1214 & H-05-2988 (SD. Tex. Filed June 2005), as here, the Fisheries Service produced an initial record that lacked emails and various notes of internal and external discussions and meetings on key questions addressed during the decision making process on the management of a particular fish species.  After the plaintiffs in that case demonstrated that the record was not complete in at least one respect, the court required the Fisheries Service to complete the record by adding those materials.  *Id.*, Order dated February 17, 2006 at 4-5 (Exhibit 2).

Similarly, in other challenges to fishery management decisions of the Fisheries Service, courts have relied on precisely the kind of internal debate that has been omitted from this record to find defendants' actions unlawful.  For example, the court in *Oceana, Inc. v. Evans,* 2005 WL 555416 (D.D.C. 2005) (Huvelle, J.) quoted from internal staff email exchanges to support its conclusion that NMFS had failed to comply with the MSA requirement to establish record keeping for bycatch and to minimize bycatch.  *Id.* at *41.  The court in *Oceana, Inc. v. Evans* was able to review the agency action carefully because, unlike here, the record in that case included notes, comments, and emails generated during development of a final rule.

As in this case, both *Conservation Assoc. v. Gutierrez* and *Oceana v. Evans* involved challenges to the legality of an amendment to a fishery management plan that took roughly two years to complete.  Also as in this case, the process involved several public hearings and discussions within NMFS and between NMFS and outside parties.  The defendants filed an administrative record in the *Oceana* case that totaled over eighty volumes, which included

13

emails and other staff communications, within NMFS and between NMFS and outside parties. *Oceana,* 2005 WL 555416 at *8. These types of communications are exactly the types of documents normally included in an administrative record, and which are critical to a full understanding by the Court of the legal claims presented. Just as the court ordered in *Conservation Assoc. v. Gutierrez,* they should be included in the record here.

## CONCLUSION

For the foregoing reasons, because the Fisheries Service has failed to file a complete record, the plaintiffs respectfully request that this Court compel the Fisheries Service to produce a complete administrative record within 30 days.


Dated: February 23, 2007.


                         Respectfully submitted,


                         /s/ Jennifer C. Chavez          
                         Stephen E. Roady
                         D.C. Bar. No. 926477
                         Jennifer C. Chavez
                         D.C. Bar No. 493421
                         Earthjustice
                         1625 Massachusetts Avenue, N.W.
                         Washington, D.C. 20036
                         202-667-4500 Telephone; 202-667-2356 Fax
                         Counsel for the Plaintiffs

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  WASHINGTON TOXICS COALITION, et al.,

11           Plaintiffs,

                                        CASE NO. C04-1998C
12       v.
                                        ORDER
13  UNITED STATES DEPARTMENT OF
    INTERIOR, et al.,
14
             Defendants.
15

16  I.     INTRODUCTION

17         This matter has come before the Court on Plaintiffs' motion to compel completion of the

18  administrative record (Dkt. No. 41). Having carefully considered the papers filed by the parties in

19  support of and in opposition to the motion, the Court hereby GRANTS in part and DENIES in part the

20  motion.

21  II.    BACKGROUND

22         Plaintiffs filed this action to challenge a set of regulations which has the effect of allowing the

23  Environmental Protection Agency ("EPA") to conduct self-consultations with respect to EPA registration

24

25

26  ORDER – 1

1    of pesticides.[1]  *See* 69 Fed. Reg. 47,732 (Aug. 5, 2004) (*codified at* 50 C.F.R. §§ 402.40 - 402.48).

2    Prior to the enactment of the regulations, the EPA would have consulted with the United States Fish and

3    Wildlife Service and the National Marine Fisheries Service (the "Services"). Plaintiffs challenge the new

4    rule on the basis that "the self-consultation regulation runs counter to the best available science and is

5    based on findings that are contrary to the evidence before the agencies." (Pls.' Reply at 2.)

6         Defendants have already produced an administrative record covering more than 5000 pages. The

7    record, as produced, includes "more than 50 sets of substantive comments,"[2] "a detailed statement of the

8    Services' decision, the basis for that decision, and the agencies' findings." (Defs.' Resp. at 2.) Plaintiffs

9    complain that the administrative record produced by the Services excludes "contrary evidence and the

10   substantial scientific and legal controversy underlying the regulation reflected in the suppressed drafts,

11   internal dialogue, meetings, and analyses that were part of the rulemaking process." (Pls.' Mot. at 1.)

12   Plaintiffs' motion seeks to compel Defendants to remedy these alleged inadequacies.

13   III.   ANALYSIS

14        Under the Administrative Procedure Act ("APA"), a court reviewing an agency action must

15   consider "the full administrative record before the [decisionmaker] at the time he made his decision."

16   *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds*

17   *by Califano v. Sanders*, 430 U.S. 99 (1977). "The 'whole' administrative record . . . consists of all

18   documents and materials directly or *indirectly* considered by agency decision-makers and includes

19   evidence contrary to the agency's position." *Thompson v. United States Dep't of Labor*, 885 F.2d 551,

20   555 (9th Cir. 1989) (citation omitted). Thus, although generally it is the agency that compiles and

21   _____

22        [1]More specifically, the regulations "delegate authority to the "EPA" to conduct unilateral
     [Endangered Species Act] Section 7 consultations, without any concurrence by the [Fish and Wildlife

23   Service] or [National Marine Fisheries Service], for EPA pesticide registrations that authorize pesticide
     uses that may affect threatened and endangered species and their critical habitat." (Compl. ¶ 1.)

24

         [2]The regulations were "the product of an extensive notice-and-comment rulemaking process"

25   which took into account more than 125,000 comments. (Defs.' Resp. at 1.)

26   ORDER – 2

1    designates the full administrative record, *see Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 56-57

2    (D.D.C. 2003), "[t]he whole administrative record . . . is not necessarily those documents that the *agency*

3    has compiled and submitted as 'the' administrative record." *Id.* Thus, supplementation of the record

4    produced may still result only in the production of the "whole administrative record," rather than in the

5    production of extrinsic data that could put the Court in the impermissible position of proceeding *de novo*

6    rather than with the proper deference to agency processes, expertise, and decision-making. *Lands*

7    *Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

8            In the instant case, the parties dispute whether Defendants should be compelled to produce (1)

9    internal agency deliberations, (2) communications with other agencies and industry, including documents

10   compiled by the EPA during its oversight of the rulemaking, and (3) documents relating to the Services'

11   past criticisms of the EPA's past actions on particular pesticides.

12           Defendants argue that the administrative record as it has been produced is sufficient because it

13   contains "a detailed statement of the Services' decision, the basis for that decision, and the agencies'

14   findings." (Defs.' Resp. at 2.) However, Defendants' argument fails to take into consideration the fact

15   that an agency's action may be arbitrary and capricious if it can be shown that "the agency . . . entirely

16   failed to consider an important aspect of the problem, offered an explanation for its decision that runs

17   counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference

18   of view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463

19   U.S. 29, 43 (1983). Furthermore, because a complete record includes all materials directly and indirectly

20   considered by the decisionmaker, *see Thompson*, 885 F.2d at 555, a "full" record goes beyond a record

21   containing only the basis for a particular decision.

22           In the case at bar, Plaintiffs have shown to the Court's satisfaction that the evidence before the

23   Services' decisionmakers likely included evidence contrary to the Services' ultimate findings, and that this

24   evidence is likely contained in documents pertaining to internal agency deliberations preceding the

25   ultimate findings. To the extent that contrary evidence was not "considered," such evidence should still

26   ORDER – 3

1   be a part of the complete administrative record because of its relevance to the issue of whether the agency

2   failed to consider an important aspect of the problem.

3       The latter principle requires that the Services produce documents relating to "past criticisms" of

4   EPA pesticide actions. These materials are relevant and necessary to the current action as evidence of

5   data and information possessed by the Services at the time they promulgated the rules.[3]

6       Likewise, to the extent that the Services maintained documents pertaining to communications

7   with other agencies and industry groups concerning the rulemaking, these documents should be produced

8   as part of the administrative record.

9       Finally, Plaintiffs also request that EPA documents pertaining to the early stages of the

10  rulemaking be produced. Although ultimately the Services issued the regulations challenged in this case,

11  the EPA took the lead role in the early stages of the rulemaking process. *See* 68 Fed. Reg. 3786 (Jan. 24,

12  2003). Plaintiffs have not shown how the EPA's rulemaking-related documents constitute materials

13  considered by the Services' decisionmakers, arguing only that the documents should be produced because

14  of the EPA's role in the process. The Court does not find that Plaintiffs have shown that the EPA's

15  documents should properly be included in the administrative record. Therefore, Plaintiffs' motion is

16  DENIED with respect to the EPA's rulemaking-related documents.

17  IV.    CONCLUSION

18      In accordance with the foregoing, Plaintiffs' motion to compel completion of the record is

19  GRANTED except with respect to the EPA's rulemaking-related documents. Federal Defendants are

20  directed to supplement the administrative record in a manner consistent with this order within sixty (60)

21

22      [3]The Services argue that the rulemaking at issue in the case at bar assessed the EPA's new

23  proposed risk assessment practices and therefore that dissatisfaction with the EPA's past practices was
    irrelevant. However, it is not beyond the realm of possibility that the perceived shortcomings in the

24  EPA's past practices could carry through to its new proposed practices. Indeed, if a comparison of the
    past practices and the proposals were to show that few changes had been made to practices previously

25  considered objectionable, a court could wonder about the rationality of the rulemaking decision.

26  ORDER – 4

1 | days.  The parties are directed to submit a new dispositive motions briefing schedule to the Court.

2

3

4 | SO ORDERED this 14th day of June, 2005.

5

6

7 | UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 | ORDER – 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

FEB 1 7 2006

Michael N. Milby, Clerk of Court

COASTAL CONSERVATION           §
ASSOCIATION, ET AL.,           §
                               §
        Plaintiffs,            §
                               §
V.                             §         CIVIL ACTION NO. H-05-1214
                               §
CARLOS GUTIERREZ, in his official capacity §
as Secretary of the United States Department §
of Commerce, ET AL.,           §
                               §
        Defendants.            §

Consolidated with

GULF RESTORATION NETWORK and   §
THE OCEAN CONSERVANCY,         §
                               §
        Plaintiffs,            §
                               §
V.                             §         CIVIL ACTION NO. H-05-2988
                               §
CARLOS GUTIERREZ, in his official capacity §
as Secretary of the United States Department §
of Commerce, and the NATIONAL MARINE §
FISHERIES SERVICE,             §
                               §
        Defendants.            §

## ORDER

Before the Magistrate Judge upon referral from the District Judge is Plaintiffs' Motion to

Compel Completion of the Administrative Record (Document No. 56). In that motion, Plaintiffs seek

an Order compelling Defendants to complete the administrative record that has been filed in this case

by adding to the record "all materials generated through the development of Amendment 22, which

purports to establish the red snapper rebuilding plan and accompanying regulations", which

amendment and regulations form the basis of this case. Plaintiffs' Brief in Support of Motion to Compel Completion of the Administrative Record Document No. 56) at 2. According to Plaintiffs, the administrative record that has been filed in this case does not include records of staff communications and discussions, internal NMFS reviews and analyses, evaluations of competing proposals and their possible impacts, or disputes in the scientific literature. Plaintiffs argue that in order for the Court to determine in this case whether Defendants' promulgation of Amendment 22 and its accompanying regulations was arbitrary and capricious, an abuse of discretion, or contrary to law, a complete record of all materials and documents directly or indirectly considered by the agency decision makers must be provided to the Court.

In response to Plaintiffs' motion, Defendants first state that they have "filed with the Court an Administrative Record ("record") supporting the challenged agency actions." Defendants' Response (Document No. 60) at 3; *see also* Defendants' Response (Document No. 60) at ("Here, the 4,900 page administrative record includes all documents containing 'information and deliberations' relied upon by the agency decision-maker in making the decisions challenged by Plaintiffs in this case). Then, Defendants argue that because they have complied with their own internal "Guidelines" for compiling an administrative record, the administrative record they have filed is entitled to a presumption of regularity which shields it from the type of criticism advanced by Plaintiffs. Finally, Defendants argue that because the administrative record, as they have filed it, is "sufficient to allow the reviewing court to evaluate the challenged action and ascertain whether the agency considered relevant factors when taking that action" and because Defendants have not omitted "documents considered by the decision-maker when making his or her decision", *see* Defendants' Response (Document No. 60) at 15-16, the record currently before the Court is complete.

2

In this case, Plaintiffs are challenging "the substantive decisions made by Defendants pertaining to the approval of Reef Fish Fishery Management Plan ("Reef Fish FMP"), Final Amendment 22, May 2004 ("Amendment 22") and the adoption of Amendment 22 without mandating bycatch reduction standards and regulations in the Shrimp Fishery in order to prevent overfishing of red snapper within the Reef Fish Fishery." Plaintiff Coastal Conservation Association's Second Amended Complaint (Document No. 50) at 2. Plaintiffs allege that Amendment 22 fails to comply with National Standards 1, 2, 9, and § 303(a)(1) of the Magnuson-Stevens Act by "failing to address shrimp trawl bycatch", and by "failing to prevent overfishing of red snapper and failing to achieve optimum yield on a continuing basis". *Id.* at 19-22. In addition, Plaintiffs allege that the decision to adopt Amendment 22 "without addressing shrimp industry bycatch", and "without addressing the best available scientific data indicating that overfishing is derived almost exclusively from shrimp trawl bycatch" is "arbitrary, capricious, contrary to law and is an abuse of agency discretion in violation of the APA [Administrative Procedures Act], 5 U.S.C. § 706(2)." *Id.*

Under the Administrative Procedures Act, a District Court is empowered to "hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706(2)(A). In making such a determination, "the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. At issue with respect to Plaintiffs' motion is what constitutes the "whole record" for purposes of review under § 706.

An administrative record is considered "whole" or "complete" when it contains documents and materials directly or indirectly considered by agency decision-makers, including evidence that is contrary to the decision-maker's decision. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th

3

Cir. 1993); *Thompson v. United States Department of Labor*, 885 F.2d 551, 555 (9th Cir. 1989);

*International Longshoremen's Association v. National Mediation Board*, ___ F. Supp.2d ___, 2006

WL 197461 (D. D.C. 2006); *Miami Nations of Indians of Indiana v. Babbitt*, 979 F. Supp. 771, 775

(N.D. Ind. 1996); *Warren Land Exchange Project v. Dombeck*, 47 F. Supp.2d 1196, 1205 (D. Ore.

1999); *Arizona Rehabilitation Hospital, Inc. v. Shalala*, 185 F.R.D. 263, 266 (D. Ariz. 1998); *see*

*also Portland Audubon Society v. Endangered Species Committee*, 984 F.2d 1534, 1548 (9th Cir.

1993) ("'The whole record' includes everything that was before the agency pertaining to the merits

of its decision."). Whether a document has "literally pass[ed] before the eyes of the final agency

decision maker" is not determinative. *Clairton Sportsmen's Club v. Pennsylvania Turnpike*

*Commission*, 882 F.Supp. 455, 464 (W.D. Pa. 1995). While an administrative record compiled and

submitted by an agency is presumed to be complete, that presumption can be rebutted. *Miami Nation*

*of Indians*, 797 F.Supp. at 776.

　　Here, at least with respect to the absence of documents and materials evidencing a dispute in

the scientific literature, or as Plaintiffs characterize it – documents and materials evidencing "a robust

debate among scientists, NMFS staff and Council members and staff during the red snapper stock

assessment process", Plaintiffs have rebutted the presumption that the administrative record submitted

by Defendants in this case is complete. While it cannot be determined, upon this record, exactly what

may be missing from the administrative record that has been submitted, it cannot be said that the

Court currently has before it all the information that the Defendants did when the decisions made the

basis of this suit were made. *Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 792

(D.C. Cir. 1984) ("If a court is to review an agency's actions fairly, it should have before it neither

more nor less information that did the agency when it made its decision."). As such, it is

4

ORDERED that Plaintiffs' Motion to Compel Completion of the Administrative Record

(Document No. 56) is GRANTED. Within thirty days after the entry of this Order, Defendants shall

"complete" the administrative record, by providing to the Court all non-privileged documents and

materials directly or indirectly considered by Defendants in making the decisions made the basis of

this case, including evidence and material that may be contrary to such decisions. This should include

non-privileged communications (including emails) among and between NMFS staff, the staff of the

Council and other parties relating to the development of Amendment 22, and all non-privileged

records related to the EIS process concerning (a) the possible impacts of the proposed rule, (b)

assessments of alternatives, (c) the impact of scientific uncertainties on the selection of alternatives,

and (d) the alternatives related to how much to reduce bycatch in the shrimp fishery (as opposed to

lowering the TAC in the directed fishery). Defendants shall also have thirty days after the entry of

this Order to compile a privilege log covering the documents and materials that have been withheld

on the basis of privilege. Such log shall be served upon Plaintiffs, who then may challenge any such

privilege assertions.

Signed at Houston, Texas, this *17th* day of *February*, 2006.


*James H. Stacy*
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**BLUE OCEAN INSTITUTE, et al.,**        )
                                        )
**Plaintiffs,**                          )
                                        )
**v.**                                   )     **No.  1:06-CV-01869-HHK**
                                        )
**CARLOS M. GUTIERREZ, et al.,**         )
                                        )
**Defendants.**                          )
_____)


### [ PROPOSED ] ORDER

Upon consideration of plaintiffs' motion to compel completion of the administrative record and the memorandum in support, as well as defendants' opposition to that motion, it his hereby ORDERED that the plaintiffs' motion is GRANTED.

FURTHER ORDERED that, within thirty (30) days after entry of this Order, defendants shall complete the administrative record by filing with the Court and with plaintiffs all non-privileged documents and materials directly or indirectly considered by defendants in denying the plaintiffs' June 2005 Petition seeking a closure of fishing in the Gulf of Mexico.  This should include all non-privileged communications – including emails – among and between defendants' staff in connection with the defendants' decision on the plaintiffs' Petition.    SO ORDERED this _____ day of _____, 2007.


                                    _____
                                    **HENRY H. KENNEDY, JR.**
                                    **UNITED STATES DISTRICT JUDGE**