UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BLUE OCEAN INSTITUTE, *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-1869 (HHK/JMF) |
| CARLOS M. GUTIERREZ, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION and ORDER**

This case has been referred to me for resolution of Plaintiffs' Motion to Compel Completion of the Administrative Record [#10] ("Pls. Mot."). Plaintiffs ask that the Court enter an order directing Defendants to "complete the administrative record" with certain documents. Pls. Mot. at 1. For the reasons stated herein, Plaintiffs' motion will be denied.

**I.    BACKGROUND**

In June 2005, plaintiff Blue Ocean Institute ("Blue Ocean"), with several other conservation groups, submitted a petition to the National Marine Fisheries Service ("NMFS") requesting that NMFS immediately stop specific longline fishing in bluefin spawning areas located in the Gulf of Mexico during spawning season in an effort to protect the declining population of the species. Memorandum in Support of Plaintiffs' Motion to Compel Completion of the Administrative Record ("Pls. Mem.") at 1-2. On

October 2, 2006, NMFS issued a final rule that, *inter alia*,[1] announced the agency decision to reject Blue Ocean's petition. 71 Fed. Reg. 58058 (Oct. 2, 2006).

Blue Ocean has challenged that rejection in this action that seeks judicial review of the promulgation of that rule under the Administrative Procedure Act. 5 U.S.C. § 701 ("APA").[2] Another section of the APA, 5 U.S.C. § 706, requires the court to "review the whole record or those parts of it cited by a party." The NMFS filed the administrative record on January 12, 2007. Whether the record filed is the "whole record" is the issue that divides the parties.

Plaintiffs allege that the current administrative record "fails to document fully the facts on which it relied and also fails to disclose all the factors it considered in deciding to reject the plaintiffs' Petition." Pls. Mem. at 4. More specifically, Plaintiffs allege that NMFS reached a decision to reject the petition "by a process that involved interactions with government staffers and scientists with varying opinions about the underlying data and assumptions, and included both formal and informal communications bearing on the ultimate question of the efficacy of the spawning area closure sought by the Plaintiffs." Id. As a result of this type of process, Plaintiffs claim the materials relied upon in reaching the decision necessarily includes documents such as reports, minutes, meeting notes, emails, and records of telephone conversations. Id. The administrative record, however, allegedly omits "emails and notes of discussions among and between Fisheries Service staff or other government parties" regarding the impact of under-estimating

---

[1] In this rule, "NMFS implemented the Final Consolidated Atlantic Highly Migratory Species Fishery Management Plan (FMP), including measures to implement time/area closures in the Gulf of Mexico (GOM), modify certain bluefin tuna (BFT) quotas, and simplify the BFT management process." Federal Defendants' Response in Opposition to Motion to Compel Completion of the Administrative Record [Amended] at 4.

[2] All references to the United States Code are to the electronic versions available in Westlaw and Lexis.

2

bluefin mortality in the Gulf and of the specific closures the Petition requests and is instead "limited largely to official decision documents." Id.

Defendants assert the administrative record, consisting of over 600 documents and thousands of pages, is valid as submitted. See Federal Defendants' Response in Opposition to Motion to Compel Completion of the Administrative Record [Amended] [#13-2] ("Defs. Opp.") at 4.  According to the government, the types of documents Plaintiffs seek–namely, "notes of telephone conversations, informal notes of meetings and discussions, and emails"–are not required to be part of the administrative record under the law of this Circuit. Id. at 5-6.  In any event, the types of documents described as "omitted" may be properly excluded under the deliberative process privilege. Id. at 6.

## II.    THE ACTUAL CONTENTS OF THE ADMINISTRATIVE RECORD

The final rule at issue is 116 pages long, and the record filed, in CD-ROM format, contains "thousands of pages." Defs. Opp. at 5.  Accompanying Defendants' opposition is the declaration of Alan Risenhoover, who states that the record filed:

> includes all documents and other materials that contain data summaries, scientific studies, and other fact-based information relevant to bluefin tuna and bluefin tuna closures.  The record also includes all public comments, peer reviews, and other public information relevant to bluefin tuna and bluefin tuna closures.  The record does not include raw data, such as raw computer data or individual logbook reports. . . . The record includes all materials identified [above] that the agency considered, referred to, relied upon, or used, regardless [of] whether they support or are contrary to the agency's action.  No documents identified [above] were not included in the record on the basis that the agency did not consider, refer to, rely upon, or use them.

Affidavit of Alan Risenhoover, ¶¶ 4-5.

Risenhoover also explains what the administrative record does not contain:

> The agency has not identified in its official records any notes of
> any telephone conversations or informal notes of meetings and
> discussions with non-agency personnel relevant to bluefin tuna or
> bluefin tuna closures. Notes of telephone conversations, informal
> notes of meetings and discussions, and emails, and other
> documents that reflect internal staff deliberations or policy
> recommendations were not included in the administrative record.

Id. ¶ 6.

Blue Ocean indicates that the exclusion described in Paragraph 6 means that NMFS did not fulfill its responsibility to file the "whole record" because the record filed is "limited largely to official decision documents." Pls. Mem. at 4. Blue Ocean argues that:

> Records of agency communications, notes, and emails play a
> fundamental role in understanding what happened during the two
> years it took to develop, propose, and finalize the HMS FMP and
> its implementing regulations, yet these documents are largely
> missing from the record in this case. To the extent that records
> exist of staff discussion, analysis of crucial factual and technical
> issues, and evaluations of the likelihood that recommended
> management measures would succeed in protecting bluefin, they
> go to the heart of the inquiry into whether the decision is arbitrary,
> capricious, or contrary to law.

Id. at 9.

NMFS for its part insists that it is under no obligation to produce raw data and pre-decisional documents generated during the process that led up to the promulgation of a final rule. Defs. Opp. at 9, 16. NMFS further argues that Blue Ocean is not permitted to probe the mental processes of the staff that were involved in the promulgation of the final rule. Id. at 16-19. Indeed, documents that reflect such processes are not subject to disclosure by the privilege that attends documents that were created during and reflect a deliberative process. Id. at 18. Instead, the validity of the final rule will rise or fall on a

4

consideration of the materials that were before the decision maker, and the existing administrative record contains all of those materials.

### III.     CONTROLLING LEGAL PRINCIPLES

The parties do not differ about the most fundamental legal principles that apply to their controversy that were so well articulated by Judge Urbina in <u>Fund for Animals v. Williams</u>, 391 F. Supp. 2d 191, 196-97 (D.D.C. 2005). As the judge stated in that case, the agency enjoys a presumption that it properly designated the administrative record and may exclude materials that reflect internal deliberations. <u>Id.</u> at 197. The agency may not skew the record by excluding unfavorable information but must produce the full record that was before the agency at the time the decision was made. <u>Id.</u>

Moreover, under Rule 301 of the Federal Rules of Evidence, "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to meet or rebut the presumption." Fed. R. Evid. 301. Thus, the question before the Court is whether Blue Ocean presents sufficient evidence to rebut the presumption that NMFS has produced the complete administrative record.

### IV.     BLUE OCEAN'S DEMANDS

Blue Ocean largely seeks unspecified documents that are likely to exist, it argues, as a result of other documents that are included in the administrative record. <u>See</u> Pls. Mem. at 9. However, Blue Ocean's evidence of these additional documents is circumstantial in the truest sense of the word, i.e. "[e]vidence of some collateral fact, from which the existence or non-existence of some fact in question may be inferred as a probable consequence." William P. Richardson, The Law of Evidence § 111 at 68 (3d ed. 1928), quoted in <u>Black's Law Dictionary</u> (8th ed. 2004). Blue Ocean is not indicating

5

specific, known additional documents that it insists should be included in the administrative record. Instead, it reasons that because there are certain documents in the administrative record, it follows that there must have been discussions and analyses of the issues raised by those documents. Those analyses and the notes of those discussions, whether occurring in person or through email or by phone, must also exist and be placed in the administrative record to make the record "whole" as the APA requires. See Pls. Mem. at 9-10.

More specifically, Blue Ocean avers there was a "robust debate" among scientists, NMFS staff, and outside reviewers concerning what Blue Ocean characterizes as "the assumptions that underlie the ultimate conclusion of the Fisheries Service to reject a closure [of the fishing area] of the type sought in the plaintiffs' Petition." Id. at 9. Blue Ocean then points to two documents in the administrative record, AR Doc. D70, containing comments that were critical of NMFS closure analysis and a second, AR Doc. D67, an outside peer review that certain assumptions NMFS made about the redistribution of fishing had to be rigorously tested. Id. On the basis of the existence of those documents, Blue Ocean protests that "the record produced here is missing emails connected with this debate, as well as any notes of meetings convened to sort out the underlying questions raised by any internal analyses." Id.

Similarly, Blue Ocean points to a concession in the administrative record that the vessel logbook data might underestimate the amount of the bycatch,[3] but that NMFS determined that this should not invalidate its analysis of the effects of closure of the fishing ground. Pls. Mot. at 10. The administrative record contains a document from an

---

[3] "In fisheries science, **by-catch** refers to species caught in a fishery intended to target another species, as well as reproductively-immature juveniles of the target species." Wikipedia, *available at* http://en.wikipedia.org/wiki/Bycatch.

6

outside reviewer that raises concerns about the statistical validity of under-reporting the catch in the logbooks and asserting that the catch of various species would be non-reported or under-reported in the logbook. Again, Blue Ocean protests that the administrative record "simply lacks any of the internal discussions, analyses, and evaluations of factual and technical issues that would be contained in email exchanges and agency meeting notes on these questions." Id.

Finally, Blue Ocean points to another portion of the administrative record in which "outside reviewers" joined Blue Ocean to create a means of ranking different species of fish (or life stages within a species) as a way of assessing "the relative importance of mortality for particular species when making decisions on closures." Id. at 10-11. Blue Ocean notes that the administrative record indicated that members of NMFS staff discuss this question, but that the record contains "no materials reflecting the details of that discussion or any related communications, reports, or analyses." Id. at 11.

In response, NMFS also acknowledges, as noted above, the exclusion of "[n]otes of telephone conversations, informal notes of meetings and discussions, and other documents that reflect internal staff deliberations or policy recommendations," as well as "raw data, such as raw computer data or individual logbook reports" from the filed administrative record. Affidavit of Alan Risenhoover, ¶¶ 4-6. However, NMFS counters that, in each of the instances Blue Ocean raises, "the agency's conclusions [as to that issue], and its supporting reasoning for its positions, are properly set forth in the record." Defs. Opp. at 10. The agency then specifies the portions of the record that prove its point. See id. at 10-11.

Blue Ocean responds with the insistence that the internal documents referenced in the Risenhoover declaration must be made part of the administrative record, and that discussions among the persons who worked in the process culminating in the final rule "are likely to have included consideration of evidence that both supported and contradicted the final agency decision." <u>Plaintiffs' Reply in Support of Their Motion to Compel Completion of the Administrative Record</u> [#14] at 7, 10.

Thus, the primary question presented is whether Blue Ocean has defeated the presumption that the administrative record is complete by showing a theoretical possibility that other documents not in the record exist. In my view, it has not. At most, it is merely as likely that such documents exist as it is that they do not. Under the most traditional understanding of how a party meets its burden of proof, Blue Ocean is reduced to theorizing that the documents *may* exist, which fails to overcome the presumption that the record is complete. Indeed, if it did, there would be no presumption of a complete record because the possibility that internal, deliberative documents exist would occur in every APA case since the employees of agencies must communicate with each other in the process of promulgating a final rule.

In any event, even if the documents requested do exist, Blue Ocean faces an insuperable hurdle in the D.C. Circuit's holding in <u>In re: Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency</u>, 156 F.3d 1279 (D.C. Cir. 1998) (on petition for rehearing en banc). In its initial decision, the court of appeals had held that the deliberative process privilege did not apply where the case against the government turned on the government's intent. The government sought rehearing, fearing that this decision meant that the deliberate process privilege would not apply in an action such as

8

this one where government action is challenged as arbitrary and capricious under the APA. The court of appeals, on rehearing, narrowed its first decision to apply only when the challenge to agency action was based on bad faith or improper behavior. As the court stated:

> According to the government, our reasoning could be interpreted as suggesting that the deliberate process privilege would not apply in a case where the government action is challenged as arbitrary and capricious under the APA because, if an illegal motive were shown, then the government's action would necessarily be arbitrary and capricious. When a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its stated reasons. Agency deliberations not part of the record are deemed immaterial. That is because the actual subjective motivation of agency decisionmakers is immaterial as a matter of law-unless there is a showing of bad faith or improper behavior. Whether or not under those circumstances it is accurate to refer to the agency's decisionmaking process as collateral, it is clear that the ordinary APA cause of action does not directly call into question the agency's subjective intent. And our holding that the deliberative process privilege is unavailable is limited to those circumstances in which the cause of action is directed at the agency's subjective motivation.

156 F.3d at 1279 (internal citations omitted); accord, AMFAC Resorts, L.L.C. v. United States Dep't of the Interior, 143 F. Supp. 2d 7, 13 (D.D.C. 2001) ("However, deliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the [administrative] record."); Ridenour v. Kaiser-Hill Co., 397 F.3d 925, 939 (10th Cir. 2005) (citing In re: Subpoena Duces Tecum, 156 F.3d at 1279.

Thus, the very documents Blue Ocean seeks, if they exist, are unavailable under the clear command of the D.C. Circuit. Moreover, it must be recalled that production of the materials Blue Ocean seeks would transform the process of judicial review of administrative decisions greatly even if limited to specific instances of claimed deficiencies in the administrative record. The agency would have to collect all internal

9

communications among agency officials pertaining to the claimed deficiency, catalogue them, and claim the deliberative process privilege where appropriate, which may be as to all of them. The privilege question would have to be resolved before judicial review of the administrative decision could even begin.[4] Creating such a new burden on the agency, the parties and the court by forcing production of even a limited number of inter-agency deliberative documents requires a clear command from the court of appeals, particularly in light of the unequivocal statement by that court that such materials are not a part of the administrative record when an agency decision is challenged as arbitrary and capricious.

The three district court decisions that are crucial to Blue Ocean's position are either distinguishable or inconsistent with this Circuit's precedents.

In <u>Miami Nation of Indians v. Babbit</u>, 979 F. Supp. 771 (N.D. Ind. 1996), the government itself had included "extensive field notes and logs of field interviews, handwritten notes and data, and certain other notes and analyses" in the administrative record. This belied the government's assertion that the decision maker had only reviewed the materials in the administrative record and compelled the rejection of the contention that "notes, logs, etc. should not be excluded across the board." <u>Id.</u> at 777. That is clearly not the situation here.

In <u>Washington Toxics Coalition v. U.S. Dep't of Interior</u>, Civil Action No. 04-1998C (W.D. Wash, June 14, 2005), the court concluded that "a 'full' record goes beyond a record containing only the basis for a particular decision." The court then concluded that it was satisfied that there had been evidence before the agency

---

[4] Note that Blue Ocean criticizes NMFS for not claiming this privilege or filing a privilege log. But, it is unfair to criticize NMFS for not claiming a privilege and filing a privilege log as to documents that it claims should not be in the administrative record in the first place.

10

decisionmakers contrary to the agency's finding and that this evidence should be part of the record, whether it was "considered" by the agency or not. That is also not the situation here. There is no showing that there was evidence contrary to the agency's findings that was not made part of the record. Moreover, insofar as the court concluded that documents "pertaining to internal agency deliberations preceding the [agency's] ultimate findings" were to be included, its conclusion is inconsistent with this Circuit's conclusion in In re: Subpoena.

Finally, insofar as the court in Coastal Conservation Assoc. v. Gutierrez, Civil Action No. H-051214 (S.D. Tx. Feb. 17, 2006), concluded that the existence of a "robust debate" among scientists, NMFS staff, and others rebuts the presumption that the administrative record is incomplete, I must disagree. I do not find that the theoretical possibility that documents *might* exist is sufficient to overcome that presumption.

## V.    CONCLUSION

For the reasons stated in the accompanying Memorandum Opinion, it is

**ORDERED** that Plaintiffs' Motion to Compel Completion of the Administrative Record [#10] is hereby **DENIED**.

**SO ORDERED.**

_____/s/_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated:   September 4, 2007